**William Douglas UTTER, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 59169.**

Court of Criminal Appeals of Texas, Panel No. 2.

Oct. 18, 1978.

Terry B. Arnn, Arlington, for appellant.

Tim Curry, Dist. Atty., Marvin Collins, Bill Harris and Howard M. Fender, Asst. Dist. Attys., Fort Worth, for the State.

Before ONION, P. J., and PHILLIPS and TOM G. DAVIS, JJ.

## OPINION

TOM G. DAVIS, Judge.

Appeal is taken from a conviction for operating a wrecker without a permit in violation of an ordinance of the city of North Richland Hills. The court assessed punishment at a fine of $101.00 following a plea of nolo contendere.

In light of appellant's contentions, a brief factual resume is deemed necessary.

The factual basis upon which the conviction is based was a stipulation of evidence entered into by the State and the appellant. This stipulation reflects that on August 5, 1977, an automobile leased from Dub Shaw Ford, Fort Worth, was involved in an accident in North Richland Hills. The driver of the auto instructed police to call Dub Shaw Ford to tow the damaged vehicle. In turn, an employee of Dub Shaw Ford informed the police dispatcher that Clarence Cornish Automobile Service, Inc., did all of its towing and to summon his wrecker to the scene. The appellant was a wrecker driver for Cornish.

The dispatcher called Cornish Automobile and asked if it had a towing permit; an employee of Cornish replied that it did. The employee mistakenly thought the dispatcher meant a Texas Railroad Commission permit, when in fact the dispatcher meant a permit issued by the City of North Richland Hills.

When the wrecker arrived at the scene, the officer discovered that the wrecker had no city permit. The officer issued a citation to the driver for operating a wrecker without a permit. The driver was then allowed to tow the disabled vehicle away. At the time these incidents occurred, Cornish had a permit to operate a wrecker from the Texas Railroad Commission and from the cities of Fort Worth, Hurst, Forrest Hills, and Arlington.

The appellant challenges the constitutionality of the ordinance involved. He maintains that in requiring the license the city is attempting to regulate an area preempted by state regulation.

The Texas Constitution Art. I, Sec. 28, provides that:

"No power of suspending laws in this State shall be exercised except by the Legislature."

Article XI, Sec. 5, provides that in towns of over 5,000 population:

" . . . providing that no charter or any ordinance passed under said charter shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State . . . ."

Article I, Sec. 28, supra, is applicable to city ordinances that conflict with the general laws of the state. *City of Baytown v. Angel,* 469 S.W.2d 923, 925 (Tex.Civ.App.—Houston, 14th Dist., 1971, writ ref'd. n.r.e.), and cases cited therein. By its very terms Art. XI, Sec. 5, supra, applies to cities such as North Richland Hills.[1]

---

1. The population of North Richland Hills was 16,514 in 1970. *Handbook of Texas Governments,* Sec. III, p. 11 (March 1973).

Article 1175, Secs. 21 and 23, V.A.C.S., delineate that authority delegated to home rule cities[2] by the Legislature:

"21. To regulate, license and fix the charges or fares made by any person owning, operating or controlling any vehicle of any character used for the carrying of passengers for hire or the transportation of freight for hire on the public streets and alleys of the city.

\*　\*　\*　\*　\*　\*

"23. To license any lawful business, occupation or calling that is susceptible to the control of the police power."

The city ordinance involved, *North Richland Hills Code* Secs. 16–156 to 16–175 (1971), provides a comprehensive scheme of control over wrecker service in that city. Among other provisions, the ordinance requires disclosure by the applicant of insurance coverage, providing a minimum amount of coverage; names, addresses and driver's license numbers of persons who operate the wreckers; specification as to size and equipment of each wrecker; prohibitions about soliciting business and going near an accident unless the wrecker company is called by the owner of the vehicle or the police; conditions to be met by applicants desiring to be on the wrecker rotation list; the posting of a bond or cash in escrow to cover damage to stored vehicles and their contents; a provision for inspection of wrecker units by the chief of police and his representatives; and the requirement that a fee of $5.00 be paid for each wrecker by the holder of the permit. Article 911b, V.A.C.S., is the statutory basis for the Railroad Commission's regulation of wreckers for hire operated within the state. Cornish had been issued a certificate to operate a wrecker in Tarrant County by the Railroad Commission.

■ The issuance of a certificate of convenience and necessity from the Railroad Commission to operate a bus in Texas does not exclude a city from regulating its operation within that city. *Town of Ascarate v. Villalobos,* 148 Tex. 254, 223 S.W.2d 945 (1949). Other cases hold that although the state licenses or otherwise regulates the activity a city may enact ordinances controlling the operation of ambulances, *City of Amarillo v. Griggs Southwest Mortuary,* 406 S.W.2d 230 (Tex.Civ.App.—Amarillo, 1966, ref'd. n.r.e.); the inspection of boats, *City of Stamford v. Ballard,* 162 Tex. 22, 344 S.W.2d 861 (1961); and the operation of taxis, *Dallas Taxicab Co. v. City of Dallas,* 68 S.W.2d 359 (Tex.Civ.App.—Dallas, 1934, no writ).

The cities' power to regulate the above activities is not without limit, however. While a city can regulate the operation of taxis, it cannot license the drivers of the taxis. *Reed v. City of Waco,* 223 S.W.2d 247 (Tex.Civ.App.—Waco, 1949, ref'd.); *City of Corpus Christi v. Gilley,* 458 S.W.2d 124 (Tex.Civ.App.—Corpus Christi, 1970, ref'd. n.r.e.). These cases involved conflicts between the ordinance and the state statute. In each of the foregoing cases, the state statute involved provided that:

"No person holding an operator's, commercial operator's, or chauffeur's license duly issued under the provisions of this Act shall be required to obtain any license for the operation of a motor vehicle from any other State authority or department." Article 6687b, Sec. 2(c), V.A.C.S.

Thus, the cities' attempt to license the drivers was in direct conflict with the statute.

The appellant has not cited, nor do we find, any such statute presenting such a direct conflict with the ordinance in question.

The appellant further contends that the ordinance involved is unconstitutional as it collects a license fee in violation of state statutes.

**2.** North Richland Hills is a home rule city. *Handbook of Texas Governments,* Sec. III, p. 11 (March 1973).

Article 11, Sec. 5, of the Texas Constitution[3] prohibits a city from enacting any ordinance inconsistent with the general laws of this state. Article 6698, V.A.C.S., provides that:

"The certificate of registration and numbering for purposes of identification, and the fees herein provided for shall be in lieu of all other similar registrations heretofore required by any county, municipality or other political subdivision of this state, *and no such registration fees* or other like burdens shall be required of any owner of *any motor vehicle or motorcycle by any county, municipality or other subdivision of the state. This provision shall not affect the right of incorporated cities and towns to license and regulate the use of motor vehicles for hire in such corporation. Nothing herein shall in anywise authorize or empower any county or incorporated city or town in this state to levy and collect any occupation tax or license fees on motorcycles, motor vehicles or motor trucks*; provided that such cities or towns are hereby authorized and empowered to levy and collect a city permit fee, not to exceed two (2%) per cent of the gross receipts per annum, for the operation of each motor vehicle transporting passengers for hire or a street rental charge based upon gross receipts, not to exceed two (2%) per cent per annum, for the operation of motor vehicles transporting passengers for hire, other than motor vehicles operating under a permit or certificate of the Railroad Commission of the State of Texas or the Interstate Commerce Commission; and provided further that nothing in this Article shall be construed as impairing or altering in any way the provisions relating to payments in any contracts, agreements, or franchises now in existence, or hereafter made between an incorporated city or town and the owners or operators of motor vehicles transporting passengers for hire. Acts 1917, p. 475. Amended by Acts 1947, 50th Leg., p. 512, ch. 302, § 1." [Emphasis added.]

The appellant urges that the five dollar fee for a permit for each wrecker is an occupation tax.

A city can collect a license fee under its police power if the purpose of the fee is regulatory. *Reed v. City of Waco,* supra; *Dallas Taxicab Co. v. City of Dallas,* supra. The test to determine if the fees collected are license fees rather than an occupation tax prohibited by Art. 6698, V.A.C.S., is set out in *Reed v. City of Waco,* supra. The Court of Civil Appeals, quoting from *Hurt v. Cooper,* 130 Tex. 433, 110 S.W.2d 896 (1937), stated:

" 'The principle of distinction generally recognized is that when, from a consideration of the statute as a whole, the primary purpose of the fees provided therein is the raising of revenue, then such fees are in fact occupation taxes, and this regardless of the name by which they are designated. On the other hand, if its primary purpose appears to be that of regulation, then the fees levied are license fees and not taxes.' (citing many cases.)" 223 S.W.2d at 255.

There is a presumption that a city ordinance is valid "and the burden of showing its invalidity rests on the party attacking it." *Town of Ascarate v. Villalobos,* supra; see *General Telephone Co. v. City of Garland,* 509 S.W.2d 927 (Tex.Civ.App.— Dallas, 1974, ref'd. n.r.e.). Here, the appellant has made no attempt to show, nor does the record reflect, that the five dollar fee was not reasonably necessary for the regulation of wreckers operating within the city. In light of the foregoing, we hold that this is not an occupation tax or license fee as prohibited by Art. 6698, V.A.C.S., nor do we find that the ordinance is in direct conflict with any state statute. We reject appellant's attack on the constitutionality of the ordinance.

Appellant contends that the evidence fails to show a violation of the ordi-

---

3. The text of the pertinent part of Tex.Const. Art. 11, Sec. 5, is set out above.

nance. This contention rests on the fact that the officer issued the citation before any towing had occurred, and ultimately gave his permission for the appellant to tow the car.

The ordinance provides:

"Sec. 16–156. Compliance with article.

Any person engaging in a motor vehicle wrecker service for hire shall comply with the provisions of this article. (Ord. No. 343, § I, 2–8–71)"

"Sec. 16–158. Service permit required.

No person shall engage in the business of a motor vehicle wrecker service for hire without first obtaining a wrecker service permit from the city for each wrecker operated within the city. (Ord. No. 343, § I, 2–8–71)" *North Richland Hills Code* Sec. 16–156, 158 (1971).

To determine if the acts of the appellant were a violation of the ordinance, it is necessary to determine what acts the ordinance prohibits. In *Harris v. Laquinta-Redbird Joint Venture,* 522 S.W.2d 232 (Tex.Civ. App.—Texarkana, 1975, ref'd. n.r.e.), the court summarized the rules regarding interpretation of ordinances.

"The same general rules of construction which apply to statutes apply also to municipal ordinances. *Reed v. City of Waco,* 223 S.W.2d 247 (Tex.Civ.App. Waco 1949, writ ref'd.). The prime objective in such construction is to determine the intention of the legislative body. *Bolton v. Sparks,* 362 S.W.2d 946 (Tex.1962). To assist in ascertaining the legislative intent resort may be had to several sources. Among these are (1) the object and purpose of the enactment and the evils sought to be prevented, 39 Tex.Jur.2d Municipal Corporations, Sec. 267, p. 594; *Hargrave v. Texas & P. Ry. Co.,* 12 S.W.2d 1009 (Tex. Comm'n App.1929, jdgmt. adopted); (2) the meaning of the words actually used, 53 Tex.Jur.2d Statutes, Secs. 146, 147; and (3) the construction placed upon the enactment by the officers or agencies charged with its administration or enforcement. *Calvert v. Kadane,* 427 S.W.2d 605 (Tex.1968); *Heard v. City of Dallas,* 456 S.W.2d 440 (Tex.Civ.App. Dallas 1970, writ ref'd. n.r.e.). In determining the meaning of the words used, an attempt will be made to harmonize the various provisions of the enactment, and the words will be given their usual and ordinary meaning, except that where technical words or words of a particular art, trade or activity are used they will be given the meaning recognized by persons engaged in that particular art, trade or activity. 53 Tex.Jur.2d Statutes, Sec. 150 p. 217; *Hindes v. Lock,* 259 S.W. 156 (Tex.Comm'n App.1924, jdgmt. adopted); *Texas & N.O.R. Co. v. Kelso Building Material Co. Inc.,* 250 S.W.2d 426 (Tex. Civ.App. Galveston 1952, writ ref'd. n.r. e.); Vernon's Tex.Rev.Civ.Stat.Ann. art. 10." 522 S.W.2d at 234–35.

The stipulation shows that at the time of the citation the appellant was engaging in the wrecker business without a North Richland Hills permit. The appellant's contention that there was no violation because he had not yet towed a car applies too narrow a construction to the ordinance. The appellant came to the scene of an accident, with equipment capable of towing, and was there to tow a damaged car. These facts are sufficient to show that appellant was engaged "in the business of a motor vehicle wrecker service" in North Richland Hills without having obtained a permit from such city.

■ The appellant also raises the question as to whether the officer's permission to tow the car creates an exception to the ordinance. North Richland Hills Code, Sec. 16–171a and b, provide:

"(a) When a police officer investigating an accident determines that any vehicle which has been involved in a collision or accident upon a public street is unable to proceed safely under its own power, or when the owner thereof is physically unable to drive such vehicle, the officer shall request the owner to designate the

wrecker company which he desires to remove the vehicle. When the owner has designated the wrecker company desired, the police officer shall communicate such fact immediately to police department headquarters, and it shall be the duty of the dispatcher receiving such information at headquarters to call the designated company, provided the company has previously obtained a valid wrecker service permit to operate in the city. In the event the company does not have a valid wrecker service permit, the owner shall be so informed and given an opportunity to designate another company from a list of companies which have obtained valid wrecker service permits, which each officer shall carry. The officer in charge at the scene of any accident may authorize use of a company which does not have a permit if requested by the individual in need of service and if it will result in no unnecessary delay in clearing the scene of the accident.

"(b) In the event the owner of a vehicle involved in an accident or collision is physically unable to designate the wrecker company desired, or refuses to designate one, the investigating officer shall communicate such fact immediately to police department headquarters. The police department shall maintain a wrecker rotation list in alphabetical order which shall contain the name and address of each wrecker service company that complies with this article in order that such company might be called upon for wrecker service by the police department. The police officer receiving a call at the police headquarters for wrecker service shall call the first wrecker company on the list to tow the disabled vehicle or move the same from the public streets of the city. After the company at the top of the list receives a call, the company's name shall be placed at the bottom of the list and the next company shall be moved to the top of the list until it receives a call. This process shall be repeated until each licensed company providing wrecker service has received a call. The police department shall notify each wrecker company in sufficient time prior to its rendering wrecker service in order that the company might adequately provide the necessary men and equipment to answer such calls."

There is no express provision in the ordinance providing that the officer's action in giving permission to a wrecker to clear the scene constitutes a waiver of the permit required by the ordinance, nor do we find that such a waiver is implied by the terms of the ordinance. The ordinance does not authorize the officer investigating a wreck to call a wrecker service which does not hold a permit. The only time where this situation could arise would be when a wrecker happens on the scene through accident or the driver of the wrecker proceeds to the scene in defiance of or under the mistaken belief that his wrecker service has the required permit. In such events, if the "individual in need of service" requests *and if it will result in no unnecessary delay in clearing the scene of the accident,"* the officer may authorize use of a wrecker which does not have a permit to clear the scene. Common sense and reason dictate the necessity of clearing the scene of an accident without "unnecessary delay" and for this reason the wisdom of giving the officer this authority is obvious. Clearly, this authority does not extend to empowering the officer to waive the violation under which appellant was prosecuted as the result of operating the wrecker without a permit required by the ordinance in question.

The judgment is affirmed.