David GORDON, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–87–01014–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 31, 1988.

Discretionary Review Refused
Nov. 30, 1988.

Charles Rice Young, Houston, for appellant.

Gilbert Douglas, City Atty., Houston, for appellee.

Before JACK SMITH and COHEN, JJ., and BISSET, J., Retired, sitting by assignment.

## OPINION

COHEN, Justice.

Appellant pleaded not guilty in the City of Houston Municipal Court to the offense of operating an adult arcade without a permit, in violation of City of Houston Ordinance No. 85–1337 (the "ordinance"). The court found him guilty and sentenced him to a fine of $750. The county court affirmed the conviction on appeal. This appeal follows.

Appellant first asserts that the ordinance is unconstitutionally vague on its face and as applied to appellant, and violates the first and fourteenth amendments to the United States Constitution. His motion to quash the complaint on this basis was denied.

Appellant complains of the definition of the term "adult arcade," of the phrase "dispensing entertainment," of the phrase "intended to be viewed by five or fewer persons," and of the provision requiring "an unobstructed view of every area of the adult arcade to which any patron is permitted access."

■ Ordinances "must be sufficiently definite to 'give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute,' and to avoid the possibility of arbitrary and erratic arrests and convictions." *Stansberry v. Holmes*, 613 F.2d 1285, 1289 (5th Cir.1980) (quoting *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972)). However, exact precision is not required, only fair warning of the conduct proscribed, in light of common understanding and practices. *Stansberry*, 613 F.2d at 1289.

■ The term "adult arcade" is defined as "any premises to which members of the public ... are admitted and permitted to

use one or more arcade devices." "Premises" is defined as:

[A] building; provided, that if a building has been physically divided into separate units that each have their own individual means of ingress or egress to the exterior of the building and which are offered by lease or otherwise for separate use and control, then it shall refer to each such separate unit.

The applicable operative section of the ordinance is 28–91(a) which states:

It shall be unlawful for any person to own, operate, manage or conduct any business in an adult arcade unless there is a permit for the adult arcade.

Appellant asks the question, "Is it unlawful to own a building, or unlawful to own a business in a building?"

Appellant relies on *Sheppard v. Giebel,* 110 S.W.2d 166 (Tex.Civ.App.—Austin 1937, no writ), in which suit was brought to enjoin the collection of taxes on electric, coin-operated phonographs and to enjoin criminal prosecutions for failure to pay such taxes. The statute was held unconstitutional because the definition of "owner" for purposes of taxation and penalties was indefinite as to whether the owner was the owner of the title to the machines, the possessor of the machines, or the person on whose premises the machines were exhibited. 110 S.W.2d at 170–71.

Substituting the definitions for "premises" and "adult arcade" in the ordinance into the operative language of § 28–91(a), the proscribed activity is:

It shall be unlawful for any person to own, operate, manage or conduct any business in any building to which members of the public ... are admitted and permitted to use one or more arcade devices, unless there is a permit for the building to which members of the public ... are admitted and permitted to use one or more arcade devices.

Clearly, the unlawful activity is owning, operating, managing, or conducting *the business* without a permit, and not owning the building. The party liable is the owner, operator, or manager of the business who has no permit. Unlike *Sheppard*, there is

no uncertainty as to who must obtain the permit and bear the penalty of not doing so. The definition of "adult arcade" is not vague.

■ Appellant also complains of the term "dispensing entertainment" found in the definition of "arcade device," which is:

"any coin- or slug-operated or electronically or mechanically controlled machine or device that dispenses or effectuates the dispensing of entertainment, that is intended for the viewing of five (5) or fewer persons in exchange for any payment of any consideration."

Appellant states that the word dispense means a "distribution in discrete units" or "to deal out in portions," and that entertainment cannot be dispensed in this manner.

The definition of dispense is "to deal out; to give out; to distribute." Webster's New Twentieth Century Dictionary, Unabridged, 528 (2d ed. 1967). There is no vagueness to the phrase "dispensing entertainment" when referring to adult arcade devices, which appellant admits are coin-operated television sets or movie projectors that deal out, give out, or distribute entertainment.

■ Appellant complains of the phrase, "intended for the viewing of five (5) or fewer persons," in the definition of arcade device. Specifically, he complains that the statute does not give notice as to whose intent is relevant and as to the relevant time interval within which such viewing by the five persons must have occurred.

A reading of the ordinance shows that because of the location of the comma, the phrase, "that is intended for the viewing of five (5) or fewer persons in exchange for any payment of any consideration," modifies "machine or device," and not "entertainment." Therefore, there is no vagueness.

In *EWAP, Inc. v. City of Los Angeles,* 158 Cal.Rptr. 579, 97 Cal.App.3d 179 (Cal. Ct.App.1979), an ordinance that prohibited enclosed booths in a picture arcade was upheld despite a challenge to the definition of arcade devices as "are maintained to

show still or motion pictures to five or fewer persons per machine at any given time." Appellant cites *EWAP*, stating that, unlike the Houston ordinance, the *EWAP* ordinance precisely specified the time interval of the exhibition with the phrase, "at any given time." The omission of this phrase from the Houston ordinance does not render it vague. Mathematic precision is not necessary. *Stansberry*, 613 F.2d at 1289. The other possible interpretations that appellant suggests, i.e. "per day" or "in the life of the movie" are not reasonable.

■ Finally, appellant complains of the phrase, "an unobstructed view of every area of the adult arcade to which any patron is permitted access." This phrase is from section 28–101(a) of the ordinance titled, "View from manager's station," which states:

> If an adult arcade has one (1) manager's station designated pursuant to section 28–92(c) of this Code, then the interior of the adult arcade shall be configured in such a manner that there is an unobstructed view of every area of the adult arcade to which any patron is permitted access for any purpose from that manager's station....

Appellant complains that the "cop on the beat" will have "unbridled discretionary determination" in enforcing this provision. This would violate the requirement that a statute be sufficiently definite so that it does not encourage arbitrary and discriminatory enforcement. *Kolender v. Lawson*, 461 U.S. 352, 357–58, 103 S.Ct. 1855, 1858–59, 75 L.Ed.2d 903 (1983).

A similar ordinance was upheld in *Antonello v. City of San Diego*, 93 Cal.Rptr. 820, 16 Cal.App.3d 161 (Cal.Ct.App.1971). There, the ordinance required that exits in an adult picture arcade be "within the constant and unobstructed view of the occupants...."

In *People v. B & I News, Inc.*, 211 Cal. Rptr. 346, 350, 165 Cal.App.3d Supp. 1, 7 (Cal.App.Dep't Super.Ct.1984), the court upheld an ordinance requiring that the entire interior of the picture arcade premises, where pictures were viewed, be visible upon entering the premises. There, the arcade operators argued that the point of visibility did not need to be the entrance of the arcade, but could be established from any aisle space or from the center of the room, much like the requirement of the Houston ordinance challenged in the present case.

The requirement in the present case is not so subjective as to allow "unbridled discretionary determinations." The location of the manager's station will provide either an unobstructed view or an obstructed view.

The ordinance provides standards that are capable of objective measurement and gives fair notice of the conduct required and prohibited. Therefore, point of error one is overruled.

Point of error two contends that the ordinance is unconstitutionally overbroad on its face and as applied to the appellant, under the first and fourteenth amendments of the United States Constitution.

■ Appellant's first example of overbreadth is section 28–101(a), requiring that the arcade must be configured "in such a manner that there is an unobstructed view of every area of the adult arcade to which any patron is permitted access for any purpose from that manager's station." Because arcades are operated in conjunction with adult bookstores, appellant claims 28–101(a) "sweeps within its ambit" other constitutionally protected activities in that bookshelves and racks obstructing the view from the managers' stations must be eliminated.

The fact that an impermissible application of a statute is conceivable is not sufficient to render a statute overbroad. *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 800, 104 S.Ct. 2118, 2126, 80 L.Ed.2d 772 (1984). The first amendment does not guarantee the right to every conceivable method of communication at all times and in all places. *Heffron v. International Soc. for Krishna Consciousness, Inc.*, 452 U.S. 640, 647, 101 S.Ct. 2559, 2563, 69 L.Ed.2d 298 (1981). The ordinance's requirement that the man-

agers' stations have an unobstructed view does not necessarily interfere with book-selling and therefore is not overbroad.

Appellant next claims that the lighting requirement in section 28–102 of the ordinance is overbroad. He claims that if applied to ordinary non-adult theaters, such a requirement would make it impossible for such theaters to operate. Section 28–102 states:

(a) Each adult arcade shall be equipped with overhead lighting fixtures of sufficient intensity to illuminate every place to which patrons are permitted access at an illumination of not less than one (1.0) footcandle as measured at the floor level.

(b) It shall be the duty of the owners and operator and it shall also be the duty of any agents and employees present in an adult arcade to ensure that the illumination described in subsection (a), above, is maintained at all times that any patron is present in the adult arcade.

■ An ordinance does not become oppressive by reason of the fact that it may be more costly to conform to its requirements. *Antonello v. City of San Diego,* 93 Cal.Rptr. 820, 823, 16 Cal.App.3d 161, 167. In *Antonello,* a requirement of not less than 10 foot candles at floor level was upheld against the appellants' claim that it was discriminatory in imposing greater burdens on "peep shows" than on ordinary theaters. The court reasoned that "peep shows" differed materially from regular theaters because of the physical setup consisting of individual booths in close quarters. *Id.*

Third, appellant contends that the ordinance criminalizes ownership of any building housing an adult arcade and that criminalizing land ownership because of misuse of the premises by the tenants makes this ordinance overbroad.

As stated in answer to point of error number one, a careful reading of the ordinance shows that the unlawful activity is owning, operating, and managing an adult arcade without a permit, and not owning the building.

■ Finally, appellant claims overbreadth in that the ordinance "purports to penalize any person who conducts any business in a building in which coin-operated devices exhibiting sexually explicit films are operated." Appellant argues that customers who buy a magazine at the arcade would be guilty of "conducting business" in an unlicensed premises.

If the statute is "readily subject to a narrowing construction by the state courts, the litigant is not permitted to assert the rights of third parties." *Young v. American Mini Theaters, Inc.,* 427 U.S. 50, 60, 96 S.Ct. 2440, 2447, 49 L.Ed.2d 310 (1976). The present ordinance is subject to a narrowing construction limiting its application to exclude mere customers while in the arcade. *See Tisdale v. State,* 640 S.W.2d 409, 414–15 (Tex.App.—San Antonio 1982, pet. ref'd).

Moreover, similar language in 18 U.S.C. 1955 has been construed as limited to exclude customers in *United States v. Joseph,* 519 F.2d 1068, 1071 (5th Cir.1975), where the court held that "a person who performs a necessary function *other than as a mere customer* or bettor in the operation of illegal gambling conducts an illegal gambling business," in violation of the statute (emphasis supplied).

Point of error two is overruled.

■ In point of error three, appellant claims that the ordinance violates due process of law and constitutes an impermissible prior restraint on free speech, in violation of the first and fourteenth amendments to the United States Constitution.

Appellant contends that the ordinance is not content-neutral in that it purports to promote health and fire safety only in adult arcades, while all other establishments exhibiting non-adult films by means of arcade devices are not regulated at all. Because his adult arcade must be remodeled to comply with the ordinance, appellant contends that the forced closing constitutes an impermissible prior restraint on free speech.

Appellant relies on *Schad v. Borough of Mount Ephraim,* 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981) *Erznoznik v.*

*City of Jacksonville,* 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975), and *Iranian Muslim Organization v. City of San Antonio,* 615 S.W.2d 202 (Tex.1981). However, these cases involve the complete prohibition of a wide range of protected first amendment expression. In *Schad,* it was "live entertainment," in *Erznoznik,* it was the showing of films containing nudity, and in *Iranian Muslim Organization,* it was all demonstrations regarding the Shah of Iran.

The present ordinance does not restrict the type of films or entertainment that can be viewed. It does not ban adult arcades, adult literature, or adult entertainment. It merely regulates the manner in which an adult arcade may operate.

Even though the ordinance singles out adult arcades from non-adult arcades, the regulation does not necessarily offend the first amendment. In *Young,* 427 U.S. at 63, 96 S.Ct. at 2448, the court rejected a prior restraint challenge to a zoning ordinance that treated adult theaters differently from other theaters and upheld the ordinance. The court held that commercial exploitation of material protected by the first amendment is subject to zoning and other licensing requirements. *Id.* Reasonable regulations of time, place, and manner of protected speech, where necessary to further significant governmental interests, are permitted by the first amendment. *Young,* 427 U.S. at 63 n. 18, 96 S.Ct. at 2449 n. 18.

The significant governmental interests stated in the preamble to article II are: to deter sexually related criminal activity occurring in adult arcades; to protect the health of patrons and employees of adult arcades from sexually transmitted diseases; and to protect the patrons and employees of adult arcades by improving egress in the event of fire.

Point of error three is overruled.

In points of error four and five, appellant claims that the ordinance is void under article 11, section 5 of the Texas Constitution and under the doctrine of preemption, because of its inconsistency with Tex.Rev. Civ.Stat.Ann. arts. 8814, 8817 (Vernon Supp.1988), and Tex.Rev.Civ.Stat.Ann.

2372w, ch. 229, 1979 Tex.Gen.Laws 498–99, *repealed by* ch. 149, sec. 49(1), 1987 Tex. Gen.Laws 1307.

A claim that a state statute preempts a municipal ordinance is a challenge to the municipal court's subject matter jurisdiction. *Compare* Tex.Penal Code Ann. sec. 1.08 (Vernon 1974); *International Longshoremen's Ass'n v. Davis,* 476 U.S. 380, 106 S.Ct. 1904, 1913, 90 L.Ed.2d 389 (1986). Although appellant's motion for new trial did not assert that the municipal court lacked jurisdiction, as required by Tex. Gov't Code Ann. § 30.269(c) (Vernon 1988), jurisdiction over the subject matter may not be waived. *Ex parte Smith,* 650 S.W. 2d 68, 69 (Tex.Crim.App.1981). We therefore address these points of error.

Tex. Const. art. 11, sec. 5 (Vernon 1955) provides that city charters may not contain provisions inconsistent with the Texas Constitution or with the general laws enacted by the state legislature. Appellant contends that the ordinance is inconsistent with articles 8814, 8817, and 2372w, and is therefore unconstitutional and void.

Tex.Rev.Civ.Stat.Ann. art. 8817, §§ 8(1) and (2) (Vernon Supp.1988), provides for the regulation of coin-operated machines:

Sec. 8. (1) No person shall engage in business to manufacture, own, buy, sell, or rent, lease, trade, lend, or furnish to another, or repair, maintain, service, transport within the state, store, or import, a music coin-operated machine or a skill or pleasure coin-operated machine without a license or registration certificate issued under this Article.

(2) A person who knowingly violates this Section is guilty of a Class B misdemeanor.

Tex.Rev.Civ.Stat.Ann. art. 8814 (Vernon Supp.1988) provides:

Except as herein provided in this Chapter, one-fourth (¼) of the net revenue derived from this Chapter shall be credited to the Foundation School Fund of the State of Texas and three-fourths (¾) of the net revenue derived from this Chapter shall be credited to the General Revenue Fund. Provided that all counties and cities within this State may levy an

occupation tax on coin-operated machines in this State in an amount not to exceed one-fourth (¼) of the State tax levied herein. Further provided that all political subdivisions of this State shall, for zoning purposes, treat the exhibition of a music and skill or pleasure coin-operated machine as indistinguishable from the principal use to which the property where exhibited is devoted. This does not prohibit cities from restricting the exhibition of coin-operated amusement machines within three hundred (300) feet of a church, school, or hospital.

There is a presumption that a city ordinance is valid, and the party attacking it has the burden of showing invalidity. *Utter v. State*, 571 S.W.2d 934, 937 (Tex.Crim.App.1978). An ordinance that is inconsistent with state legislation is impermissible. *City of Brookside Village v. Comeau*, 633 S.W.2d 790, 796 (Tex.1982), *cert. denied*, 459 U.S. 1087, 103 S.Ct. 570, 74 L.Ed.2d 932 (1982). However, the fact that there is state legislation on a particular subject does not automatically preempt that subject from city regulation. Local regulation, ancillary to and in harmony with the state legislation, is acceptable. *Id.* A statute and an ordinance will not be held repugnant to each other if any reasonable construction upholding both can be reached. *City of Beaumont v. Jones*, 560 S.W.2d 710, 711 (Tex.Civ.App.—Beaumont 1977, writ ref'd n.r.e.).

We find no conflict between the ordinance and article 8814, which grants the cities the power to tax and to zone coin-operated machines. We find that these particular regulations of configuration and lighting are not inconsistent with article 8814.

Whether article 8817 preempts the ordinance is a closer question. It requires a State permit to, "engage in business to ... own ... a ... coin-operated machine." The ordinance requires a city permit "to own ... any business in an adult arcade," and regulates the lighting and design of the premises as a condition of granting the permit. An "adult arcade" is a building containing "arcade devices," which include "coin-operated machines."

Appellant primarily relies on three cases that declared ordinances void due to obvious conflicts with state law. *Royer v. Ritter*, 531 S.W.2d 448 (Tex.Civ.App.—Beaumont 1975, writ ref'd n.r.e.) (ordinance required liquor stores to close at 8:00 o'clock p.m. and on certain holidays, whereas state law required stores to close at 9:00 p.m. and did not require closing for the same holidays); *Jere Dairy, Inc. v. City of Mount Pleasant*, 417 S.W.2d 872 (Tex.Civ.App.—Texarkana 1967, writ ref'd n.r.e.) (ordinance required delivery of fresher milk than that allowed by state law to be sold in city); *City of Fort Worth v. McDonald*, 293 S.W.2d 256 (Tex.Civ.App.—Fort Worth 1956, writ ref'd n.r.e.) (complete prohibition on coin-operated machines void where same machines were allowed by state license). Appellant argues that once the State has granted a permit under article 8814 to engage in the coin-operated machine business, the city is without power to enforce an ordinance requiring compliance with conditions not found in the state statute.

The present ordinance contains no direct facial conflict with state law, like the ordinances found void in *Royer* and *McDonald*. The *McDonald* court characterized the conflict as one between a municipal ordinance and "a revenue statute," 293 S.W.2d at 258 and held that no city ordinance could supercede a revenue statute by declaring that a state licensed business within its limits was a nuisance. *Id.* That has not happened in this case.

It has been held that any legislative intention to limit the power of home rule cities must "appear with unmistakable clarity," *City of Sweetwater v. Geron*, 380 S.W.2d 550, 552 (Tex.1964). Thus, in *Geron*, a state statute providing exclusive grounds for dismissal on disciplinary grounds of civil service employees was held not to preempt the enforcement of a city ordinance requiring mandatory retirement at a certain age. In *City of Weslaco v. Melton*, 158 Tex. 61, 308 S.W.2d 18 (1957), an ordinance prohibiting the sale of raw milk was upheld, even though it was conceded that the prohibited milk complied

with all federal, state, and county regulations, was wholesome for human consumption, and the respondent held the necessary permits. 308 S.W.2d at 21.

We find no direct conflict between the ordinance and article 8817 that is of the magnitude that caused ordinances to be struck down in *Royer, McDonald,* and *Jere Dairy.* We therefore conclude that the ordinance is not preempted by article 8817.

Point of error four is overruled.

■ Appellant argues in his fifth point of error that the ordinance is void because it is preempted by and conflicts with the former Tex.Rev.Civ.Stat.Ann. art. 2372w (in effect on the date of the offense).

Article 2372w authorizes cities to regulate the location of "sexually oriented commercial activities," and provides that violation of city or county regulations adopted under the act is a class B misdemeanor. Tex.Rev.Civ.Stat.Ann. 2372w, ch. 229, 1979 Tex.Gen.Laws 498–99, *repealed by* ch. 149, sec. 49(1), 1987 Tex.Gen.Laws 1307. Appellant argues that because the City of Houston has adopted an ordinance pursuant to article 2372w, § 28–35 of Houston City Ordinances, and has not exempted adult arcades from the requirements of § 28–35, that appellant's offense under the present statute is an offense under state law, namely, a class B misdemeanor, and must be punished under the terms of city ordinance 28–35. We disagree.

Section 3(b) of art. 2372w exempts book stores and theaters from the location regulations therein; adult arcades, as a form of theater, arguably are not subject to article 2372w. Moreover, article 2372w authorizes political subdivisions to enact ordinances relating to the location of sexually oriented commercial enterprises; it does not mention the interior configuration, i.e., lighting and design, of a sexually oriented enterprise.

Point of error five is overruled.

The judgment is affirmed.