

**NUMBERS 13-05-123-CR & 13-05-124-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**BEATRICE VILLARREAL,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

---

**On appeal from the County Court at Law No. 4
of Nueces County, Texas.**

---

# O P I N I O N

**Before Justices Yañez, Rodriguez, and Garza
Opinion by Justice Yañez**

A jury found appellant, Beatrice Villarreal, guilty of offending (1) a state law

prohibiting the sale of obscene devices,[1] and (2) a municipal ordinance prohibiting the

---

[1] *See* TEX. PENAL CODE ANN. § 43.23(c)(1) (Vernon 2003). This offense constitutes a Class A misdemeanor. *See id.* § 43.23(d) (Vernon 2003).

operation of a sexually oriented business without a permit.[2]  The trial court then imposed

$1,500 in fines and terms of imprisonment amounting to one year in county jail.  Appellant

appeals her conviction through six issues.  We affirm.

## I. Background

On June 25, 2004, Corpus Christi Police Officer Adrian Dominguez was working

undercover when he visited a business, called Friends 4 Ever, to determine if it was selling

obscene materials or devices.  Dominguez was aware that law enforcement agents had

previously informed the business owner that the business needed to cease selling certain

items that were considered obscene under state law.  Appellant was at the business

working as a cashier and sales clerk.  During the visit, Dominguez purchased a vibrator

from appellant; the vibrator was called "Lick it Lover" and resembled the male sexual

organ.  A few hours after Dominguez's purchase, police officers arrived at the business,

where they executed a search warrant and placed appellant under arrest.

In trial court cause number 04-CR-6215-4 (hereinafter "cause one"),[3] appellant was

charged by complaint with having committed an offense under section 43.23(a) of the

penal code.[4]  Under this cause, it was alleged that "[o]n or about 1:30 p.m. on June 25,

2004 . . . in Nueces County," appellant, "knowing the content and character of a certain

device, to-wit:  a dildo and vibrator, knowingly promote[d] or possess[ed] with intent to

---

[2] *See* CORPUS CHRISTI, TEX., CODE OF ORDINANCES ch. 48, art. I, § 48-18(b) (1996).  This offense constitutes a Class A misdemeanor.  *See id.* at § 48-3(b) (1996).

[3] Appellate cause number 13-05-124-CR.

[4] *See* TEX. PENAL CODE ANN. § 43.23(c)(1).

promote said device, which was obscene."[5]

In trial court cause number 04-CR-6197-4 (hereinafter "cause two"),[6] appellant was charged by information with having committed offenses under sections 48-18(b) of the Corpus Christi Code of Ordinances ("the Code") and 43.23(c)(1) of the penal code.[7]  Under this cause, appellant was alleged to have "unlawfully intentionally and knowingly conduct[ed] a business as a sexually oriented business within the city of Corpus Christi, Texas, without having secured a permit issued by the Corpus Christi Chief of Police to conduct such a business."[8]  The cause further alleged that "[o]n or about 6:14 p.m. on June 25, 2004 . . . in Nueces County," appellant, "knowing the content and character of a certain device, to wit:  erection makers (stimulators), dildo type devices, anal beads, penis pumps and simulated vaginas, possess[ed] with intent to promote said device, which was obscene."[9]

Appellant pleaded not guilty to the State's allegations in both causes, which were then tried jointly before a jury.  The jury found appellant guilty on all counts.  With respect to cause two, the trial court imposed a $500 fine and a six-month term of imprisonment in county jail.  As to cause one, the trial court imposed a $1,000 fine and a six-month term of imprisonment in county jail, which was to run consecutively with the sentence imposed

---

[5] *See id.*

[6] Appellate cause number 13-05-123-CR.

[7] *See* CORPUS CHRISTI, TEX., CODE OF ORDINANCES ch. 48, art. I, § 48-18(b); TEX. PENAL CODE ANN. § 43.23(c)(1).

[8] *See* CORPUS CHRISTI, TEX., CODE OF ORDINANCES ch. 48, art. I, § 48-18(b).

[9] *See* TEX. PENAL CODE ANN. § 43.23(c)(1).

3

in cause two.

Appellant's original appellate brief challenged her convictions through four issues. After the parties in the instant case submitted their briefs, the United States Court of Appeals for the Fifth Circuit issued its opinion in *Reliable Consultants, Inc. v. Earle*.[10] In that opinion, the Fifth Circuit held that provisions of penal code section 43.23—criminalizing the promotion of obscene devices—violated the Fourteenth Amendment of the United States Constitution.[11] In the interest of justice, we afforded appellant an opportunity to raise any additional argument she may derive from *Reliable*.[12] Appellant subsequently submitted a supplemental brief that raised two new issues. The State filed a supplemental brief in response.

## II. Constitutionality of Section 43.23

The general rule concerning passage of an unconstitutional statute is that the law is void from its inception and cannot provide a basis for any right or relief.[13] Appellant thus argues that her convictions under section 43.23(a) of the penal code cannot stand because that statute is facially unconstitutional in light of the Fifth Circuit's holding in *Reliable.*

In arriving at its holding in *Reliable*, the Fifth Circuit first sought to determine the right placed at stake by section 43.23's criminalization of obscene devices, stating:

> Plaintiffs claim that the right at stake is the individual's substantive due process right to engage in private intimate conduct free from government

---

[10] 517 F.3d 738 (5th Cir. 2008).

[11] *Id.* at 740.

[12] *See* TEX. R. APP. P. 38.7 ("A brief may be amended or supplemented whenever justice requires, on whatever reasonable terms the court may prescribe.").

[13] *Lapasnick v. State*, 784 S.W.2d 366, 368 (Tex. Crim. App. 1990).

4

intrusion. The State proposes a different right for the Plaintiffs: "the right to stimulate one's genitals for non-medical purposes unrelated to procreation or outside of an interpersonal relationship."[14]

Unlike the Texas Court of Criminal Appeals, which engaged in the same discussion twenty-three years earlier in *Yorko v. State*,[15] the Fifth Circuit found that the issue before it was "whether the Texas statute impermissibly burdens the individual's substantive due process right to engage in private intimate conduct of his or her choosing," and concluded that "the Texas law burdens this constitutional right."[16]

The two justices composing the panel majority in *Reliable* are not the first jurists to take issue with section 43.23. In *Regalado v. State*, wherein the Fourteenth Court of Appeals affirmed a defendant's conviction for selling an obscene device in violation of section 43.23, Chief Justice J. Curtiss Brown succinctly expressed his displeasure with the statute in a concurring opinion, stating: "Here we go raising the price of dildos again. Since this appears to be the law in Texas I must concur."[17] We share Chief Justice Brown's sentiments; moreover, we agree with the legal reasoning set out by the *Reliable* majority.[18] And though we embrace the Fifth Circuit's decision, we are unfortunately constrained from following it.

Fifth Circuit precedent is not binding on Texas courts, and its constitutional

---

[14] *Reliable Consultants*, 517 F.3d at 743.

[15] 690 S.W.2d 260, 263-66 (Tex. Crim. App. 1985).

[16] *Reliable Consultants*, 517 F.3d at 744.

[17] *Regalado v. State*, 872 S.W.2d 7, 11 (Tex. App.–Houston [14th Dist.] 1994, pet. ref'd) (Brown, C.J., concurring).

[18] *But see Varkonyi v. State*, No. 08-06-00255-CR, 2008 Tex. App. LEXIS 3353, at *21-26 (Tex. App.–El Paso May 8, 2008, no pet. h.) (criticizing *Reliable*'s legal reasoning).

pronouncements are highly persuasive at best.[19] An explanation for why Texas courts and other state courts are not bound by the constitutional pronouncements of the federal district and circuit courts can be found in *United States ex rel. Lawrence v. Woods*.[20] In that case, Lawrence was found guilty of violating an ordinance that criminalized interfering with the duties of a police officer.[21] While Lawrence's appeal was pending before the Supreme Court of Illinois, a federal district court, in an unrelated declaratory judgment action, held that the interference ordinance was unconstitutional and void on its face as repugnant to the federal Constitution.[22] The Supreme Court of Illinois later affirmed Lawrence's conviction, and Lawrence eventually appealed to the Seventh Circuit, contending "that the Supreme Court of Illinois failed to follow, under the supremacy clause, the federal district court's ruling . . . that the interference ordinance is constitutionally void on its face."[23] The Seventh Circuit rejected Lawrence's contention, explaining:

---

[19] *See Shpikula v. State*, 68 S.W.3d 212, 225 (Tex. App.–Houston [1st Dist.] 2002, pet. ref'd) (citing *Vaughn v. State*, 888 S.W.2d 62, 74 (Tex. App.–Houston [1st Dist.] 1994), *aff'd*, 931 S.W.2d 564 (Tex. Crim. App. 1996)); *see also Woodward v. Tex. Dep't of Human Res.*, 573 S.W.2d 596, 598 (Tex. 1978). In *Woodward*, the Texas Supreme Court stated:

> [I]n the absence of a controlling decision by the United States Supreme Court, Texas courts of civil appeals are bound by the pronouncements of the Texas Supreme Court on the law. 'After a principle, rule or proposition of law has been squarely decided by the (Texas) Supreme Court . . . the decision is accepted as a binding precedent by the same court or other courts of lower rank when the very point is again presented in a subsequent suit between different parties.' And, until the Supreme Court states to the contrary, its pronouncement is the law on an expressed issue.

*Id.* (citations omitted); *see generally* Stuart Buck & Mark L. Rienzi, *Federal Courts, Overbreadth, and Vagueness: Guiding Principles for Constitutional Challenges to Uninterpreted State Statutes*, 2002 UTAH L. REV. 381, 427-35 (2002).

[20] 432 F.2d 1072 (7th Cir. 1970).

[21] *Id.* at 1073.

[22] *Id.*

[23] *Id.* at 1074-75.

The Supreme Court of the United States has appellate jurisdiction over federal questions arising either in state or federal proceedings, and by reason of the supremacy clause the decisions of that court on national law have binding effect on all lower courts whether state or federal. On the other hand, because lower federal courts exercise no appellate jurisdiction over state tribunals, decisions of lower federal courts are not conclusive on state courts.

Of course in a given factual setting when a lower federal court has jurisdiction over the subject matter and the parties, its adjudication is the law of the case and its judgment is binding on all other courts, subject only to the appellate process. But that is not the situation here. The district court's declaration that the interference ordinance is unconstitutional was made in an unrelated case and at a time when petitioner's appeal from his conviction was pending in the Supreme Court of Illinois. In these circumstances, we hold that the federal court's ruling was not binding on the state appellate tribunal.[24]

Just as state courts are not bound by declaratory judgments, a lower federal court's issuance of an injunction—as done by the Fifth Circuit in *Reliable*—also fails to directly bind state courts. As expressed by the United States Supreme Court in *Ex parte Young*: "It is proper to add that the right to enjoin an individual, even through a state official, from commencing suits under circumstances already stated, does not include the power to restrain a court from acting in any case brought before it, either of a civil or criminal nature . . . ."[25]

This Court thus remains duty-bound, for better or worse, to follow the rulings of the court of criminal appeals, which has held—in contrast to the Fifth Circuit—that section 43.23 does not violate the due process clause of the Fourteenth Amendment.[26] Because

---

[24] *Id.* at 1075-76.

[25] *Ex parte Young*, 209 U.S. 123, 163 (1908).

[26] *See Yorko*, 690 S.W.2d at 261-266. We have little reason to believe that the court of criminal appeals now takes issue with its holding in *Yorko*. In *Ex parte Dave*, 220 S.W.3d 154, 159-60 (Tex. App.–Fort Worth 2007, pet. ref'd), the Second Court of Appeals rejected the appellant's argument that section 43.23 of

7

we must follow the court of criminal appeals' holding that section 43.23 is constitutional, we reject the argument in appellant's supplemental brief that contests her convictions for promoting an obscene device. For the same reason, we also reject appellant's contention that the holding in *Reliable* warrants a reversal of her conviction for operating a sexually oriented business without a permit. The two issues in appellant's supplemental brief are therefore overruled.

### III. Entrapment

### A. Applicable Law

When appellant raised the defense of entrapment at trial, she had the burden of producing evidence to establish every element of that defense.[27] She had to present a prima facie case that (1) she engaged in the conduct charged; (2) because she was induced to do so by a law enforcement agent; (3) who used persuasion or other means; and (4) those means were likely to cause persons to commit the offense.[28] Once she made a prima facie showing of each element, the State then had the burden of persuasion to disprove entrapment beyond a reasonable doubt.[29] In reviewing a challenge to the legal sufficiency of the evidence to support a jury's rejection of a defense to prosecution, we use the same standard used in reviewing the sufficiency of the evidence to support a verdict of guilt, looking at the sufficiency of the evidence to support both the verdict as well as the

---

the penal code violated the due process clause of the Fourteenth Amendment, and the court of criminal appeals refused appellant's subsequent petition for discretionary review.

[27] *See Hernandez v. State*, 161 S.W.3d 491, 497 (Tex. Crim. App. 2005).

[28] *See id.*

[29] *See id.* at 498.

8

rejection of the defense.[30]

When an entrapment defense is presented at trial, the fact-finder is authorized to weigh the evidence and draw a conclusion as to whether that evidence establishes entrapment as a matter of fact or law.[31] In reviewing a jury's rejection of an entrapment defense, we determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the criminal offense beyond a reasonable doubt and also could have found against the defendant on the issue of entrapment beyond a reasonable doubt.[32] This review must take into account that the trier of fact, not the appellate court, was free to accept or reject all or any portion of any witness's testimony.[33] In cases where the entrapment defense is asserted, the fact-finder may disbelieve some or all of a witness's testimony, even when that testimony is uncontradicted.[34]

## B. Discussion

Appellant testified she told Dominguez that she could not sell any of the obscene devices he was browsing, but that he ultimately induced her to sell the vibrator. According

---

[30] *See Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991). We review a challenge to the legal sufficiency of the evidence to support a verdict of guilt by viewing the evidence in the light most favorable to the verdict to determine if any rational trier of fact could have found beyond a reasonable doubt the essential elements of the offense. *Wilson v. State*, 7 S.W.3d 136, 141 (Tex. Crim. App. 1999). Under this standard, the fact-finder is the exclusive judge of the witnesses' credibility and the weight given to the evidence, may draw reasonable inferences from basic to ultimate facts, and is entitled to resolve any conflicts in testimony and reject or accept any or all of the evidence presented by either side. *Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996).

[31] *Hernandez*, 161 S.W.3d at 500.

[32] *Id.*

[33] *Id.*

[34] *See id.* at 501.

to her testimony, the inducement occurred in the following manner:

> When [Dominguez] got [the vibrator] out of the container he said, again, that he didn't think it was considered something that I couldn't sell to him and since he was a regular customer he didn't find that there was anything wrong with it and why would I risk selling anything to a customer who had shopped there frequently.

Based on this testimony, appellant asserts on appeal that she made a prima facie showing of every element of the entrapment defense. She further contends that the State did not carry its burden to disprove the entrapment defense beyond a reasonable doubt because it failed to rebut the aforementioned testimony. Appellant thus argues that entrapment was established as a matter of law.

Listening to appellant's testimony from the witness stand, a reasonable trier of fact could have either (1) concluded that this was "an appalling example of police misconduct and law enforcement trickery run rampant," or (2) concluded "from appellant's words, appearance, demeanor, and tone that [she] was indulging in *post hoc* creativity."[35] Dominguez provided testimony that raised credibility concerns and created a disputed fact issue with regards to appellant and her testimony, presenting matters that were for the jury to resolve. Dominguez testified that appellant invited him to browse through obscene devices. He also stated that when he initially began looking at the vibrator, appellant commented, "Hey, whoever you buy that for they're really going to like it." According to Dominguez, he never told appellant that she should sell the vibrator to him because he was a regular customer. Based on this testimony and the reasonable inferences drawn therefrom, the jury had reason to disbelieve appellant's claim that she was induced to sell

---

[35] *See id.* at 500.

the vibrator. Given the record before us, we conclude the evidence is legally sufficient to support both the verdict of guilt and the rejection of appellant's entrapment defense. Appellant's entrapment issue is overruled.

### IV. Municipal Ordinance

Chapter 48 of the Code regulates "sexually oriented businesses to promote the public health, safety and welfare of the citizens of Corpus Christi, and to establish reasonable and uniform regulations to prevent the concentration of sexually oriented businesses in the city."[36] A municipality's authority to create such regulations is derived from chapter 243 of the local government code ("Chapter 243"), which states that "[a] municipality by ordinance . . . may adopt regulations regarding sexually oriented businesses as the municipality or county considers necessary to promote the public health, safety, or welfare."[37] Appellant was convicted of offending section 48-18(b) of the Code, which states that "[a] person commits an offense if that person conducts a business as a *sexually oriented business* within the City of Corpus Christi unless a permit is issued by the chief of police for the conduct of such business."[38] The term "sexually oriented business" is defined in the Code and Chapter 243. Under the Code, the term means the following:

> An **adult cabaret, adult lounge,** nude studio, adult modeling studio, love parlor, adult bookstore, adult movie theater, adult video arcade, adult movie arcade, adult video store, adult motel, **adult novelty shop, adult arcade,**

---

[36] CORPUS CHRISTI, TEX., CODE OF ORDINANCES ch. 48, art. I, § 48-1(a) (1996).

[37] TEX. LOC. GOV'T CODE ANN. § 243.003(a) (Vernon 2005).

[38] CORPUS CHRISTI, TEX., CODE OF ORDINANCES ch. 48, art. IV, § 48-18(b) (Ord. No. 22596, § 2, 6-11-1996) (emphasis added). Chapter 48 states that a person "conducts business" if that person "[o]perates a cash register, cash drawer or other depository on business premises" or "[d]isplays or takes orders from any person for any merchandise, goods, entertainment or other services offered on the business premises." *Id*. ch. 48, art. I, § 48-2 (1996).

**adult encounter parlor, escort agency,** or other commercial enterprise the primary business of which is the regular offering of a service or the selling, renting, or exhibiting of devices or any other items intended to provide sexual stimulation or sexual gratification to the customer **or which regularly sells, rents or exhibits pictures, whether motion or still, or sells, rents or exhibits devices or any other items distinguished or characterized by an emphasis on matter depicting, describing, or relating to "specified sexual activities" or "specified anatomical areas."**[39]

The term, as defined in Chapter 243, does not include the bolded language. Chapter 243 thus applies only to commercial enterprises that sell, rent, or exhibit certain items as part of their primary business, while the Code applies to these enterprises in addition to those that regularly sell, rent or exhibit, certain items.[40]

Appellant challenges the legality of section 48-18(b) by contending that the Code conflicts with the legislative intent of Chapter 243. She states that "[the Code] attempt[s] to do that which [Chapter 243] did not intend for it to do: to bring under its purview

---

[39] *Id.* ch. 48, art. I, § 48-2 (emphasis added).

[40] *See* TEX. LOC. GOV'T CODE ANN. § 243.002 (Vernon 2005). This Court's understanding of the Code's definition—with respect to how terms modify or qualify other terms—is expressed through the following outline:

An adult cabaret, adult lounge, nude studio, adult modeling studio, love parlor, adult bookstore, adult movie theater, adult video arcade, adult movie arcade, adult video store, adult motel, adult novelty shop, adult arcade, adult encounter parlor, escort agency, or other commercial enterprise

(1) the primary business of which is the regular
  (a)  offering of a service or
  (b)  the selling, renting, or exhibiting of devices or any other items
  intended to provide sexual stimulation or sexual gratification to the customer; OR

(2) which regularly
  (a)  sells, rents or exhibits pictures, whether motion or still, or
  (b)  sells, rents or exhibits devices or any other items
  distinguished or characterized by an emphasis on matter depicting, describing, or relating to "specified sexual activities" or "specified anatomical areas."

*See* CORPUS CHRISTI, TEX., CODE OF ORDINANCES ch. 48, art. I, § 48-2. The relevant difference between the Code and the local government code is that the local government code contains the first prong, but not the second.

commercial establishments which did not sell . . . particular items or devices as its primary business." Though appellant recognizes that the Code's definition of a sexually oriented business brings more commercial establishments within its purview than there would have been under Chapter 243's definition, she never argues that section 48-18(b) is unconstitutionally overbroad or vague as a result. Appellant's brief simply contends that the ordinance's wider reach evidences its conflict with the legislative intent of Chapter 243, and states that "[t]o the extent a city ordinance is in conflict with the general statute, IT IS VOID." Limited to this argument on appeal, we find against appellant.

There is a presumption that a city ordinance is valid, and the party attacking it has the burden of showing invalidity.[41] An ordinance that is inconsistent with state legislation is impermissible.[42] However, the fact that there is state legislation on a particular subject does not automatically preempt that subject from city regulation.[43] Local regulation, ancillary to and in harmony with the State's legislation, is acceptable.[44]

The ordinance in the instant case is not inconsistent with the law of this State. We first note that Chapter 243 does not contain a series of State-enforced regulations; rather, it contains a series of regulatory proposals that local governments may copy should they wish to promulgate their own regulations governing sexually oriented businesses. Second, the Code does not conflict with the legislative intent of Chapter 243—it does not impede

---

[41] *Gordon v. State*, 757 S.W.2d 496, 502 (Tex. App.–Houston [1st Dist.] 1988, pet. ref'd) (citing *Utter v. State*, 571 S.W.2d 934, 937 (Tex. Crim. App. 1978)).

[42] *Id.*

[43] *Id.*

[44] *Id.*

local governments from (1) remedying problems arising from "the unrestricted operation of certain sexually oriented businesses"[45] or (2) adopting regulations to govern such businesses.[46] Finally, the fact that a business owner may be required to obtain a permit under the Code's definition of a sexually oriented business, but would not have been required to do so under the more limited scope of Chapter 243's definition, does not automatically warrant the conclusion that a conflict exists.[47]

It is possible that appellant intends to assert that the Code's definition of a sexually oriented business is *preempted* by Chapter 243's definition. In other words, appellant is asserting that the State has defined "sexually oriented business" and Corpus Christi may not change the term's meaning by adding language that broadens its reach. Courts have held, however, that any legislative intention to limit the power of local governments must appear with unmistakable clarity,[48] and a review of Chapter 243 does not reveal, with unmistakable clarity, an intent to prohibit local governments from altering the definition of a sexually oriented business. It is conceivable that such an intent was not established because the legislature foresaw the possibility that a municipality would choose to expand

---

[45] *See* TEX. LOC. GOV'T CODE ANN. § 243.001(a) (Vernon 2005).

[46] *See id.* § 243.003.

[47] *See City of Weslaco v. Melton*, 158 Tex. 61, 308 S.W.2d 18, 21-22 (1957) (upholding an ordinance prohibiting the sale of raw milk, even though it was conceded that the prohibited milk complied with all federal, state, and county regulations, was wholesome for human consumption, and the respondent held the necessary permits).

[48] *See Gordon*, 757 S.W.2d at 502 (citing *City of Sweetwater v. Geron*, 380 S.W.2d 550, 552 (Tex. 1964)).

Chapter 243's definition in order to more effectively exercise its police powers.[49] Determining if an alteration is constitutionally permissible is a matter that is ultimately predicated upon whether it is "arbitrary and capricious, having no substantial relation to the general welfare."[50] Nothing in appellant's brief, however, permits us to entertain this latter inquiry.

We find that appellant has not satisfied her burden to prove the invalidity of section 48-18(b). Furthermore, because appellant has failed to show why this Court should reject the Code's definition of a sexually oriented business, we need not address her challenge to the sufficiency of the evidence that she operated a "sexually oriented business" as that term is defined by Chapter 243. Appellant's second issue is therefore overruled.

## V. Double Jeopardy

In her third issue, appellant contends that her Fifth Amendment guarantee against double jeopardy was violated when she was charged and convicted for (1) operating a sexually oriented business without a permit and (2) promoting an obscene device. She fails to provide, however, any argument on appeal explaining how the Double Jeopardy Clause was violated. As a consequence, we find that appellant has waived her third issue.[51]

---

[49] *See generally* TEX. LOC. GOV'T CODE ANN. § 243.0075 (Vernon 2005) ("The municipality may license any lawful business or occupation that is subject to the police power of the municipality."); *Ex parte Woodall*, 154 S.W.3d 698, 702 (Tex. App.–El Paso 2004, pet. ref'd) (stating that "a city may enact reasonable regulations to promote the health, safety, and general welfare of its people as a valid exercise of its police power").

[50] *See Stansberry v. Holmes*, 613 F.2d 1285, 1289 (5th Cir. 1980).

[51] *See* TEX. R. APP. P. 38.1(h) (stating that a "brief must contain a clear and concise argument for the contentions made").

## VI. Legal Sufficiency Challenge

Appellant received one conviction for promoting, or intending to promote, an obscene device at 1:30 p.m., and a second conviction for committing the same offense at 6:14 p.m. Both offenses were said to have occurred on June 25, 2004. Appellant challenges the legal sufficiency of the evidence supporting the latter conviction on the basis that there was no evidence that she promoted, or intended to promote, an obscene device on June 25, 2004, at 6:14 p.m. The State responds by directing our attention to *Ponce v. State*, wherein this Court stated that "[t]he 'on or about' language of an indictment allows the State to prove a date other than the one alleged in the indictment as long as the date is anterior to the presentment of the indictment and within the statutory limitations period."[52] The State thus contends that "although the jury charge was unnecessarily specific concerning the time of the offense as '[o]n or about 6:14 p.m. on June 25, 2004,' the evidence measured against the hypothetically correct jury charge adequately proved that the offense occurred before the presentment of the indictment and within the limitations period."

Though the State's brief accurately presents the law to this Court, we still find ourselves plagued by the fact that the State's brief does not assert that appellant promoted, or intended to promote, an obscene device on more than one occasion or in more than one manner. The brief only discusses the one instance in which appellant sold the vibrator to Dominguez at 2:00 p.m. Presuming that appellant was prosecuted for this act under cause one, which charged her with promoting an obscene device on or about

---

[52] *Ponce v. State*, 89 S.W.3d 110, 117 (Tex. App.–Corpus Christi 2002, no pet.).

16

1:30 p.m., we have searched the record for evidence of a second unlawful act that would justify her conviction for promoting an obscene device on or about 6:14 p.m., as set out in cause two.

Though not asserted by the State, a reading of the State's complaint and the jury charge leads us to believe that appellant—in addition to being prosecuted for promoting an obscene device by selling to Dominguez—was prosecuted for a second act of promotion stemming from her possession of six or more obscene devices.[53] Under cause two, the State asserted that appellant possessed, with the intent to promote, "erection makers (stimulators), dildo type devices, anal beads, penis pumps and simulated vaginas." Other than the "dildo type device" that appellant sold to Dominguez, there was no proof that appellant promoted, through the act of selling, any of the other aforementioned items. There was evidence, however, that appellant, as a sales clerk, possessed numerous amounts of the other unsold items (far more than six).[54] We conclude that such possession may constitute a second act of promotion under section 43.23(c)(1),[55] because

---

[53] The jury charge included the following instruction: "A person who possesses six or more obscene devices or identical or similar obscene articles is presumed to possess them with intent to promote the same." *See* TEX. PENAL CODE ANN. § 43.23(f) (Vernon 2003).

[54] *See Regalado*, 872 S.W.2d at 11 (finding that appellant, as sales clerk of an adult book store, was in possession of dildos within store); *Myers v. State*, 781 S.W.2d 730, 732 (Tex. App.–Fort Worth 1989, no pet.) (finding that the jury could find beyond a reasonable doubt that appellant knowingly possessed obscene devices with the intent to promote them because the State "established that appellant, as the sole employee on duty, was in charge of the store, had possession of and control over dildos and other sexually-oriented devices, knew the obscene character of the devices, and was promoting the dildos and other items by offering them for sale"); *Kennedy v. State*, 774 S.W.2d 822, 825 (Tex. App.–El Paso 1989, no pet.) ("The jury in this case could reasonably conclude that the Appellant, as sole employee on duty, stationed at an overlook post, responsible for making sales facilitated by the merchandise displays, was in charge of and responsible for the static exhibition of these obscene devices. As a result, there was sufficient evidence that Appellant was in possession of these devices and in keeping with his job responsibilities, intended to promote them via the use of these static exhibits."); *see also Hall v. State*, 646 S.W.2d 489, 491 (Tex. App.–Houston [1st Dist.] 1982), *rev'd on other grounds*, 661 S.W.2d 101 (Tex. Crim. App. 1983).

[55] TEX. PENAL CODE ANN. § 43.21(c)(1).

17

section 43.23(f) states that "[a] person who possesses six or more obscene devices or identical or similar obscene articles is presumed to possess them with intent to promote the same."[56] Accordingly, because there is legally sufficient evidence[57] that appellant possessed more than six obscene devices on a date anterior to the presentment of the indictment and within the statutory limitations period, we overrule appellant's legal sufficiency challenge.

## VII. Conclusion

We affirm the trial court's judgments.

LINDA REYNA YAÑEZ,
Justice

Publish. TEX. R. APP. P. 47.2(b).

Opinion delivered and filed this
the 3rd day of July, 2008.

---

[56] TEX. PENAL CODE ANN. § 43.23(f).

[57] *See generally Jackson v. Virginia*, 443 U.S. 307, 319 (1979).