Affirmed and Opinion filed August 23, 2005









Affirmed and Opinion filed August 23, 2005

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-04-01108-CV

____________

 

THE CITY
OF HOUSTON, Appellant

 

V.

 

STEVE
WILLIAMS, ET AL., Appellees

 

_______________________________________________________

 

On Appeal from the 80th District Court

Harris County, Texas

Trial Court Cause No. 02-22690-A

_______________________________________________________

 

O P I N I O N








The City of Houston, defendant
below, brings this interlocutory appeal to challenge the trial court=s entry
of partial judgment in favor of appellees, who are former fire fighters for the
City.[1]  In its first two issues, the City contends
that the trial court erred by improperly denying its plea to the
jurisdiction.  In its remaining two
issues, the City contends that the trial court erred by improperly granting
partial judgment on the fire fighters= two
claims.  Finding that the trial court
properly denied the City=s plea to
the jurisdiction and properly granted partial judgment in the fire fighters= favor,
we affirm.

I.          The City=s Plea to
the Jurisdiction

The City=s plea to
the trial court=s
jurisdiction asserted three distinct grounds: 
1) the City enjoyed governmental immunity, 2) the fire fighters could
not sue the City because they had not exhausted their administrative remedies,
and 3) the fire fighters could not seek money damages under the Declaratory
Judgments Act.  The City re-urges the
first two grounds in its first issue on appeal and re-urges its third ground in
its second issue on appeal. 

A.        The City=s
Asserted Governmental Immunity

1.         Standard
of Review

Because governmental immunity
from suit defeats a trial court=s
jurisdiction, it is properly asserted in a plea to the jurisdiction.  See Tex. Dep=t of
Parks & Wildlife v. Miranda, 133 S.W.3d 217, 225B26 (Tex.
2004) (citing Tex. Dept= of
Transp. v. Jones, 8 S.W.3d 636, 637 (Tex. 1999).  Determining whether a court has subject
matter jurisdiction is a question of law. 
Id. at 226 (citing Tex. Natural Res. Conservation Comm=n v.
IT-Davy, 74 S.W.3d 849, 855 (Tex. 2002). 
When a plea to the jurisdiction challenges the pleadings, we decide
whether the pleader has alleged facts that affirmatively demonstrate the court=s
jurisdiction.  Id. (citing Tex.
Ass=n of Bus. v. Tex. Control Bd., 852
S.W.2d 440, 446 (Tex. 1993)).  However,
when a plea to the jurisdiction challenges the existence of jurisdictional
facts, we also consider relevant evidence submitted by the parties when that
evidence is necessary to resolve the jurisdictional issues raised, just as the
trial court is required to do.  Id.
at 227 (citing Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 555 (Tex.
2000)).  We review a trial court=s ruling
on subject matter jurisdiction de novo.  Id.
at 228 (citing IT-Davy, 74 S.W.3d at 855). 








The City enjoys governmental
immunity.[2]  See City of Houston v. Clear Channel
Outdoor, Inc., 161 S.W.3d 3, 5 (Tex. App.CHouston
[14th Dist.] 2004, pet. filed); see also San Antonio Indep. Sch. Dist. v.
McKinney, 936 S.W.2d 279, 283 (Tex. 1996) (cities and counties enjoy
sovereign immunity).  This immunity
provides two types of protection: immunity from liability and immunity from
suit.  Miranda, 133 S.W.3d at 224
(citing Jones, 8 S.W.3d at 638); Federal Sign v. Tex. S. Univ.,
951 S.W.2d 401, 405 (Tex. 1999), superceded by statute on other grounds as
stated in Gen. Servs. Comm=n v.
Little-Tex Insulation Co., 39 S.W.3d 591, 593 (Tex. 2001)).  We address both below.

2.         Immunity from Liability

The City argues that it enjoys
immunity from liability because the activities that underlie this suitCfire
protection and related personnel matters, such as manning and staffing its fire
departmentCare governmental functions.  See Tex.
Civ. Prac. & Rem. Code '
101.0215(a)(1) (fire protection is a governmental function); Gates v. City
of Dallas, 704 S.W.2d 737, 739 (Tex. 1986) (municipal corporations enjoy
some degree of immunity when engaged in governmental functions), superceded
by statute as stated in City of Terrell v. McFarland, 766 S.W.2d 809, 813
(Tex. App.CDallas 1988, writ denied).  However, the City contracted with the fire
fighters to work for the City.  As the
Texas Supreme Court stated in Little-Tex:

When the State contracts,
it is liable on contracts made for its benefit as if it were a private person. Federal
Sign, 951 S.W.2d at 405; State v. Elliott, 212 S.W. 695, 697B98 (Tex.Civ.App.CGalveston 1919, writ
ref'd). Consequently, when the State contracts with private citizens it waives
immunity from liability. See Federal Sign, 951 S.W.2d at 408.








39 S.W.3d
at 594.  Thus we conclude that the City
waived its immunity from liability by contracting with the fire fighters.  See id.; Clear Channel, 161
S.W.3d at 5 (city had waived immunity from liability simply by contracting with
a private party); Mokwa v. City of Houston, 741 S.W.2d 142, 145 (Tex.
App.CHouston
[1st Dist.] 1987, writ denied) (trial court had jurisdiction over police
officer=s suit
against city for back pay) (citing City of Galveston v. Russo, 508
S.W.2d 882, 884 (Tex. App.CHouston
[14th Dist.] 1974, writ ref=d n.r.e.)
(trial court had jurisdiction over fire fighters= suit for
wages they contended city owed to them)).

3.         Immunity from Suit

We now
decide whether the Legislature has waived the City=s
immunity from suit by clear and unambiguous language.  See Little-Tex, 39 S.W.3d at 594
(citing Univ. of Tex. Med. Branch v. York, 871 S.W.2d 175, 177 (Tex.
1994)).  Section 51.075 of the Local
Government Code applies to municipalities, such as the City, and provides that,
A[t]he municipality
may plead and be impleaded in any court.@  Tex.
Local Gov=t Code ' 51.075
This court=s opinion in Clear Channel
compels us to hold that this language clearly and unambiguously waives the City=s
immunity from suit.  See 161
S.W.3d at 8; Goerlitz v. City of Midland, 101 S.W.3d 573, 577 (Tex. App.CEl Paso
2003, pet. filed) (Aplead and
be impleaded@ waives immunity from suit); Knowles
v. City of Granbury, 953 S.W.2d 19, 22 
(Tex. App.CFort
Worth 1997, writ denied) (same).

In
addition, the City=s charter
states that the City can Asue and
be sued.@  See City
of Houston Charter, art. II, ' 1 (Act
of 1905).  The Texas Supreme Court has
held that Asue and be sued@ language
is sufficiently clear and unambiguous to waive immunity from suit.  See Missouri Pac. R.R. Co. v. Brownsville
Navigation Dist., 453 S.W.2d 812, 813 (Tex. 1970); see also United Water
Servs., Inc. v. City of Houston, 137 S.W.3d 747, 755 (Tex. App.CHouston
[1st Dist.] 2004, pet. filed) (Asue and
be sued@ language
in City=s charter
waives immunity from suit).

Thus, we
conclude the City does not enjoy governmental immunity either from liability or
from suit.  The trial court did not err
by denying the plea to the jurisdiction on this ground.








B.        Exhaustion
of Administrative Remedies

The City
asserts that the trial court lacked jurisdiction because, according to the
City, the fire fighters failed to exhaust the administrative remedies available
to them, both as active employees and after their retirement.  As we discuss below, the fire fighters could
not use the grievance procedures while they were employed because the City had
not taken any action yet for which the fire fighters could file a
grievance.  Additionally, once the City
took such an action, the fire fighters already had retired, and the statutory
provisions do not require non-employees to use the grievance procedures.  

1.         During the Fire Fighters=
Employment

The City
initially asserts that the fire fighters failed to use the grievance procedures
outlined in Chapter 143 of the Local Government Code while they were still
employed by the fire department. 
However, the fire fighters were not required to file a grievance until
they were aggrieved, and their grievance did not occur while they were employed
by the City.








Chapter
143 details a four-step grievance procedure. 
Tex. Local Gov=t Code '
143.127(d). To begin a grievance action, Aa fire
fighter . . . must file a completed written step I grievance form . . . within
30 days after the date the action or inaction for which the person feels
aggrieved occurred.@  See id. '
143.128(a) (emphasis added).  In this
case, the actions the fire fighters are complaining of did not occur until they
retired and the City paid them their lump-sum termination payouts.  With respect to the fire fighters= first
claim, which we refer to as the Debit Dock claim, the fire fighters=
complaint is that the City improperly deducted the previously-paid overtime
amounts from their termination payouts. 
With respect to the fire fighters= second
claim, which we refer to as the Termination Pay claim, the fire fighters=
complaint is that the City paid them only their regular salary without premium
pay for accrued but unused leave time. 
Neither action took place until the City paid the fire fighters their
termination payouts; this occurred after the fire fighters had retired
from the department.  See Waco Indep.
Sch. Dist. v. Gibson, 22 S.W.3d 849, 852 (Tex. 2000) (claim not ripe when
school district had adopted policy but no child had yet been affected by it); see
also City of Grand Prairie v. M.B. Capital Investors, Inc., No.
05-95-00921-CV, 1996 WL 499790, *4 (Tex. App.CDallas
Aug. 27, 1996, writ dism=d) (not
designated for publication) (ripeness doctrine prevents judicial interference
until parties Afeel the effects of the decision
in a concrete way@) (citing
City of El Paso v. Madero Dev., 803 S.W.2d 396, 400 (Tex. App.CEl Paso
1991, writ denied)); but see Ridgeway=s, Inc.
v. Payne, 853 S.W.2d 659, 663 (Tex. App.CHouston
[14th Dist.] 1993, no writ) (alleged unlawful employment practice of providing
reduced life insurance benefits for older employees occurred when insurance
policy was adopted or, at the latest, when its terms were communicated to
employee).  Thus, we conclude the fire
fighters were not required to file a grievance while they were employed.[3]


2.         After the Fire fighters Retired

The City
next contends that the City has Aclear,
published grievance procedures for filing a grievance after employment with the
City has ended,@ and
argues that the fire fighters were required to file a complaint with the Office
of the Inspector General.  This Office
investigates allegations of employee misconduct concerning City employees.  See Executive Order No. 1-39 ' 2 (eff.
date Feb. 02, 2004) (establishing Office of Inspector General for Investigation
of Employee Misconduct).  Although the
Executive Order establishing this Office provides that City employees have an
affirmative duty to report incidents of criminal or administrative misconduct
by City employees, nothing in the Order requires former employees to
submit their complaints to this Office before pursuing judicial relief.  See Executive Order No. 1-39 ' 11 (describing
duties of City employees).








Finally,
we also conclude that, after they had retired, the fire fighters were not
subject to the grievance process outlined in Chapter 143 of the Local
Government Code. Once the fire fighters retired, they were no longer Afire
fighters@ under
the definition the Local Government Code provides.  See Tex.
Local Gov=t Code  ' 143.003
(defining Afire fighter@ as a
member of a fire department).  Thus, they
could no longer use the grievance procedures Chapter 143 provides because only a
fire fighterCa member of the fire departmentCcan file
a grievance. See id. '
143.127(a) (a Afire fighter@ may file
a grievance).  In fact, the parties
stipulated that, at the time the fire fighters received their termination
payouts, they were no longer employees and, as such, they were not subject to
the jurisdiction of the City=s Civil
Service Commission or the grievance process of Chapter 143 of the Local
Government Code.[4]  

Accordingly,
we reject the City=s
contention that it enjoys immunity from suit because the fire fighters failed
to exhaust their administrative remedies before filing suit, and we overrule
the City=s first
issue.

C.        Declaratory Judgments Act

The City
also asserts that the trial court lacked jurisdiction because the fire
fighters, who are seeking money damages, are attempting to use the Declaratory
Judgments Act to circumvent the City=s
governmental immunity.  See IT-Davy,
74 S.W.3d at 856 (A[P]rivate
parties cannot circumvent the State=s
sovereign immunity from suit by characterizing a suit for money damages, such
as a contract dispute, as a declaratory-judgment claim.@); see
also City of San Benito v. Ebarb, 88 S.W.3d 711, 721 (Tex. App.CCorpus
Christi 2002, pet. denied) (citing IT-Davy, 74 S.W.3d at 855B56).  








This
assertion fails for three reasons. 
First, the trial court=s
judgment expressly reserves any determination of money damages for a later
date.  Second, the fire fighters asked
the trial court to, and the trial court did, construe the relevant statutory
provisions before declaring that the City=s methods
of calculating the fire fighters= pay did
not comply.  See IT-Davy, 88
S.W.3d at 859B60 (emphasizing that the
plaintiff was Anot asking the trial court to
construe a legislative enactment@ but,
instead, sought a declaration that the plaintiff Aperformed
additional work . . . and, thus, the [defendant] owed [the plaintiff] more
money@).  Finally, and most importantly, the fire
fighters= request
for declaratory relief cannot represent an attempt to circumvent the City=s
immunity because, as we have just held, the City enjoys no governmental
immunity in this case.  See Ebarb,
88 S.W.3d at 721 (ATherefore,
sovereign immunity is not waived for a request for declaratory relief that
seeks money damages and such a suit can only be maintained with legislative
consent.@) (citing IT-Davy, 74
S.W.3d at 859B60) (emphasis added).

Thus, the
fire fighters did not fail to exhaust their administrative remedies, and the
trial court did not err in overruling the City=s plea to
the jurisdiction on this ground.  We
overrule the City=s second
issue.

II.        Factual Background

To
understand the parties=
substantive arguments, and the City=s
remaining two issues on appeal, it is necessary to understand how the City
schedules the fire fighters= work
cycles and how the City calculates the fire fighters= pay,
both while employed and upon retirement. We initially address the fire fighters= work
cycles and the City=s method
for determining when a fire fighter is entitled to overtime pay.  These issues are relevant to the Debit Dock
claim.  We then turn to the City=s method
for calculating the amount it pays to fire fighters when they take approved
leave and for calculating the amount of the fire fighters= lump-sum
termination payouts upon retirement. 
These issues are relevant to the Termination Pay claim.

A.        The Fire Fighters= Work
Cycles








The event
giving rise to the fire fighters= Debit
Dock claim began when the City revised its fire fighters= work
schedules in 2001.[5]  Before then, the fire fighters were scheduled
to work twenty days during each 72-day work cycle.  A fire fighter=s work
day is actually a 24-hour shift.  The
twenty scheduled work days included Adebit
days.@  The City included debit days to ensure that
each fire fighter worked an average of 46.7 hours each week.  Historically, fire fighter attendance on
debit days was haphazard; the fire fighters were more apt to call in sick or
use vacation time on a debit day than on another work day.  Additionally, the City=s fire
department was understaffed.

In late
2001, the City devised a new work schedule, designed to encourage fire fighters
to report to work on debit days, and to provide 39 additional fire fighters for
each shift.  In November of 2001, the
City changed the fire fighters= work
schedule accordingly.  The work cycle
continued to span 72 days.  Importantly,
though, the City now required its fire fighters to work an additional
twenty-four hours during each cycle, resulting in 21 scheduled work days during
each 72-day work cycle.  This resulted in
an average work week of 49 hours.

Rather
than allocating the additional twenty-four hour period to a single day, the
City split the 24 additional hours into three eight-hour shifts.  The City then assigned one eight-hour shift
to each of three debit days.  The City=s policy
was to pay overtime rates for those eight-hour shifts on debit days only if the
fire fighter actually worked the shift. 
In other words, if a fire fighter did not work because he was on
approved sick or vacation leave on his scheduled debit day, then the fire
fighter still received his usual salary, but did not receive overtime pay.  If a fire fighter actually worked on his
debit day, then the fire fighter received sixteen hours of regular pay in
addition to eight hours of overtime pay.

As
mentioned, the new schedule began in November of 2001.  However, the fire fighters=
paychecks did not reflect the City=s
policy.  The City initially paid the fire
fighters for eight overtime hours even on debit days when the fire fighters did
not actually work.  But when the fire
fighters retired, the City deducted the amount of overtime the City alleged was
paid mistakenly from the fire fighters= lump-sum
termination payouts.  In their Debit Dock
claim, the fire fighters assert that the City improperly reduced their lump-sum
termination payouts by docking the previously-paid overtime.        








B.        The City=s Method
for Calculating Termination Pay

While
employed by the City=s fire
department, a fire fighter=s salary
includes Aregular pay,@ and may
include Apremium
pay.@[6]  A fire fighter=s regular
pay includes Abase pay,@ which is
the same for all fire fighters, and Alongevity
pay,@ which is
based upon an individual fire fighter=s length
of service with the fire department.  See
Tex. Local Gov=t Code '
143.110(b).  Premium pay includes Aassignment
pay@ and Aeducational
incentive pay.@ Id.  A fire fighter receives assignment pay for
performing specialized functions within the department, such as being an
emergency ambulance attendant or being part of the hazardous materials response
team.  A fire fighter receives
educational incentive pay for completing major fields of study in fire
protection.  

As part
of their compensation, fire fighters also accrue sick leave and vacation
time.  If a fire fighter takes an
approved sick day or vacation day, then the City pays the fire fighter his or
her full salary.  A fire fighter=s full
salary includes regular pay and any premium pay to which the fire fighter is
entitled.  When a fire fighter retires,
he or she is entitled to a lump-sum termination payout for any sick days and
vacation days that were accrued but not taken. 
The City calculated the fire fighters= lump-sum
termination payouts using only the fire fighters= regular
pay, and not any premium pay the fire fighters might have earned.  In the fire fighters=
Termination Pay claim, they assert the City should have calculated their
lump-sum termination payouts using the fire fighters= regular
pay and any premium pay to which they were entitled.  

Having
set the factual backdrop for the fire fighters= two
claims, we now address the procedural posture of this appeal.     

III.       Procedural Background








As
mentioned above, the fire fighters have two claims involved in this appeal, the
Debit Dock claim and the Termination Pay claim.[7]  In the first, the fire fighters assert that
the City improperly docked their lump-sum termination payouts for overtime
payments that the City alleged were made mistakenly.  In the second, the fire fighters assert that
the City incorrectly reduced their lump-sum termination payouts by compensating
them only at their base salary, and not including any premium salary to which
they were entitled. 

In
asserting these two claims, in fact, the fire fighters requested several types
of relief in the underlying suit. The fire fighters asked for declaratory
relief, money damages, attorney=s fees,
costs, and injunctive relief.[8]  

After
both sides had filed multiple motions for summary judgment, the trial court
scheduled a bench trial.  The case was
tried on stipulated facts and exhibits, and the trial court entered a partial
judgment.  The partial judgment does
three things.  First, it rejects the City=s
arguments that the trial court lacked jurisdiction, either because the City
enjoys immunity, or because the fire fighters failed to exhaust their
administrative remedies.  Second, the
judgment states that the trial court has construed the relevant statutory
provisions and concluded that the City=s methods
of calculationCboth for the fire fighters= Debit
Dock claim and for their Termination Pay claimCare not
in compliance with those provisions.  And
finally, the judgment reserves any determinations of damages, attorney=s fees,
and injunctive relief for a later date. 








The City
then brought this interlocutory appeal, raising four issues for our review.[9]  We have already disposed of the City=s first
two issues, in which it asserted that the trial court lacked jurisdiction.  In its third issue, the City argues that,
because a logical construction of the relevant statutory provisions requires a
fire fighter to be physically present on the job to receive overtime pay, the
trial court erred in granting judgment in the fire fighters= favor on
the Debit Dock claim.  Finally, the City
argues that, because it is only required to pay the lump-sum termination payouts
based upon base salary and longevity, the trial court erred in granting
judgment in the fire fighters= favor on
the Termination Pay claim.  We address
each of the City=s contentions
below.

IV.       Debit Dock Claim

In their
third issue, the City contends that the trial court erred in granting partial
judgment in the fire fighters= favor on
their Debit Dock claim.  The City and the
fire fighters submitted this case to the trial court under an agreed statement
of facts and exhibits.  See Tex. R. Civ. P. 263 (AParties
may submit matters in controversy to the court upon an agreed statement of
facts filed with the clerk . . . and such agreed statement signed and certified
by the court to be correct and the judgment rendered thereon shall constitute
the record of the cause.@).  In an appeal from a trial court=s
judgment on an agreed case, the only issue on appeal is whether the trial court
properly applied the law to the agreed facts. 
Abbott v. Blue Cross & Blue Shield of Tex., Inc., 113 S.W.3d
753, 757 (Tex. App.CAustin
2003, pet. denied) (citing State Farm Lloyds v. Kessler, 932 S.W.2d 732,
735 (Tex. App.CFort Worth 1996, writ denied); Chiles
v. Chubb Lloyds Ins. Co., 858 S.W.2d 633, 635 (Tex. App.CHouston
[1st Dist.] 1993, writ denied)).  

We
initially interpret the applicable statutes before turning to the City=s
arguments in urging reversal.  








A.        The statute requires the City to pay the fire fighters for 24
hours of overtime during each 72-hour cycle.

Section
142.0017(b) of the Local Government Code states that fire fighters cannot be
required to work more than an average of 46.7 hours a week during the 72-day
work cycle. Tex. Local Gov=t Code '
142.0017(b).  This section also provides
that, if a fire fighter is required to work more than an average of 46.7 hours
a week during the work cycle, then he or she is entitled to be compensated for
overtime.  Id.

Therefore,
we must count the hours per week a fire fighter averages during the 72-day work
cycle to determine whether he or she is entitled to overtime.  See id.  Section 142.0017(e) specifies what hours must
be included in the computation of the average number of hours in a work
week.  Id. '
142.0017(e).  This section states that,
in addition to hours that are actually worked, hours spent on-call and on
approved leave also must be counted.  Id.
at '
142.0017(e)(1), (2).

Therefore,
the proper method to determine whether a fire fighter is entitled to overtime
is as follows.  First, the City must
add:  1) all hours the fire fighter
actually worked; 2) all hours the fire fighter was on-call as provided in
142.0017(e)(1); and 3) all hours the fire fighter was on approved leave as
provided in 142.0017(e)(2).  See id.  This yields the total number of hours for the
72-day work cycle.  Next, the City must
divide this amount by the number of weeks in the 72-day work cycle to yield the
average number of hours per work week. 
If the average number of hours per week exceeds 46.7 hours, then the
City must compensate the fire fighter for the additional hours.  See id. '
142.0017(b) (overtime required for hours that exceed a 46.7 hour per week
average).

Under the
revised schedule, each 72-day work cycle contained 24 hours in excess of the
statutorily-mandated 46.7-hour average work week.  Thus, we conclude the City was required to
pay the fire fighters for 24 hours of overtime pay during each 72-day work
cycle. 

B.        The City=s
arguments are not persuasive.








Nevertheless,
the City advances several arguments in support of its contention that the trial
court erred in granting partial judgment in the fire fighters= favor on
their Debit Dock claim.  We address each
of the City=s arguments in this regard
below.  

1.         By statute, the City cannot exclude hours spent on approved
leave from its computation of the average number of hours in a work week.

The City
initially relies upon section 142.0017(e)=s use of
the conjunctive (Aand@ rather
than the  disjunctive Aor@) to
contend that hours are included only if the fire fighter is both on-call and
on approved leave.  See Tex. Local Gov=t Code '
142.0017(e).  We disagree.  This section specifies which hours are to be
counted in certain calculations, listing hours that are spent on-call and hours
that are spent on approved leave.  See
id.; see also Aerospatiale Helicopter Corp. v. Universal Health
Servs., Inc.,  778 S.W.2d 492, 502
(Tex. App.CDallas 1989, writ denied) (one
use of Aand@ is to
refer to either or both of two alternatives) (citing Neighborhood Comm. on
Lead Pollution, et al. v. Bd. of Adjustment of Dallas, 728 S.W.2d 64, 68
(Tex. App.CDallas 1987, writ ref=d
n.r.e.)).  A logical reading of the
section=s use of
the conjunctive simply requires the City to include both types of hours in its
computation.[10]   See Elgin Bank of Tex. v. Travis County,
Texas, 906 S.W.2d 120, 121 (Tex. App.CAustin
1995, writ denied) (per curiam) (AThe word >and= may be
construed as a disjunctive to prevent an absurd result.@) (citing
Board of Ins. Comm=rs v.
Guardian Life Ins. Co. of Tex., 142 Tex. 630, 180 S.W.2d 906,
908B09 (Tex.
1944)).








2.         The City=s
reliance on Tijerina is misplaced.

In its
briefing, the City mistakenly relies upon the Texas Supreme Court=s
decision in Tijerina to support its contention that it was not required
to pay the fire fighters overtime.  See
Tijerina v. City of Tyler, 846 S.W.2d 825 (Tex. 1992).  The City contends that the Texas Supreme
Court=s holding
in that case permits overtime payments only for Aofficial
work assignment[s] or hours physically at work.@  This argument is an iteration of the City=s
position that the fire fighters must have been available for the taxpayers= benefitCand not
on approved leaveCin order
to receive overtime pay.  The City
misreads Tijerina.  

The only
issue in Tijerina was whether the City was required to pay overtime when
a fire fighter was on-call but not physically at work.  Id. at 826.  We do not construe its holding to mean the
City must pay overtime only when a fire fighter is on-call or physically
present at work, as the City urges.

3.         Section 143.0017(f) does not permit the City to designate
particular hours during the work cycle as the only ones eligible for overtime
compensation.

Next, the
City argues that it is not required to pay overtime unless the fire fighter Aactually
worked@ during
the three 8-hour periods the City designated as overtime shifts.  See Tex. Local Gov=t Code ' 142.0017(f) (fire fighter is
entitled to be paid overtime Afor the excess hours worked@). 
In making this argument, the City ignores the statutory emphasis on the entire
72-day work cycle, and the average hours per work week; it also ignores
the statutory directive that the entitlement to overtime compensation is made
without regard to hours worked in a particular work week.








Subsection (f) of section 142.0017
provides that, if a fire fighter is required to work for more hours during Aa work cycle[,]@ then overtime must be paid Afor the
excess hours worked without regard to the number of hours worked in any one
week of the work cycle.@  Id. (emphasis added).[11]  Thus, the statutory scheme looks to the entire
72-day work cycle and requires overtime for all hours that exceed a weekly average
of 46.7 hours.  And, in calculating
the weekly average, the statute requires the City to include hours spent on
approved leave.  

The City stipulated that its revised
schedule contained an additional 24 hours during each 72-day work cycle. This
schedule obtains regardless of whether the City considers these additional
hours to have been scheduled at the very beginning, somewhere in the middle, or
at the end of the cycle. See id. at ' 143.0017(f) (entitled to overtime without
regard to the number of hours worked in any one week of the work cycle).
Accordingly, because the statute requires overtime compensation for the
additional 24 hours Awithout regard to the number of hours worked in any one week
of the work cycle,@ the City cannot escape that obligation by designating
certain shifts as the only ones eligible for overtime compensation. 

4.         On appeal, the City cannot disregard its stipulation that a
debit day constitutes a 24-hour work assignment.

Next, the
City argues that the last eight hours of a debit day shiftCthose
hours that the City contends were the only ones eligible for overtimeCwere, in
fact, hours during which the fire fighters were off-duty entirely.[12]  Thus, the City contends, because the fire
fighters are off-duty for the final eight hours of a debit day shift, the City
was not required to pay them at all, much less to pay them at overtime
rates.  This argument, however, directly
contradicts the record.  The fire
fighters and the City stipulated: AEach
24-hour shift, including a debit day, is a required work assignment that
commences at 6:30 a.m. and lasts 24 hours until 6:30 a.m. the following
morning.@  Stipulation # 15 (1st Set of Stipulations) (emphasis
added). 

5.         We do not look to legislative intent when, as here, the
statute unambiguously requires the City to include hours spent on approved
leave in its calculation of the average hours in a work week.








The City
asserts that the legislative history of section 142.0017 indicates that the
Legislature did not intend to include hours spent on approved leave in the
calculation of hours worked.  However,
the unambiguous language of the statute clearly requires the City to include
these hours in its calculation of the average number of hours in a work
week.  Section 142.0017(e) states, AIn
computing the hours in a work week or the average number of hours in a work
week . . . all hours are counted . . . that are sick time, vacation time, meal
time, holidays, compensatory time, death in the family leave, or any other
authorized leave.@  See Tex.
Local Gov=t Code '
142.0017(e).  Contrast this with the
language the Legislature used in section 142.0015(d), which does not apply to
the City because it applies only to smaller cities: AIn
computing the hours in a work week or the average number of hours in a work
week . . . vacation, sick time, holidays, time in lieu of holidays, or
compensatory time may be excluded as hours worked.@  See id. '
142.0015(d) (emphasis added).  

Because
section 142.0017(e) unambiguously requires the City to include hours spent on
approved leave in its calculation, we need not reach the City=s legislative
history argument.  See Continental
Cas. Ins. Co. v. Functional Restoration Assocs., 19 S.W.3d 393, 399 (Tex.
2000) (ABecause
the [statutory] language . . . is unambiguous, we need not look to the prior
law in determining legislative intent; instead, we may presume that the
Legislature intended the plain meaning of its words.@);
Fleming Foods of Tex., Inc. v. Rylander, 6 S.W.3d 278, 284 (Tex. 1999) (ABut prior
law and legislative history cannot be used to alter or disregard the express
terms of a code provision when its meaning is clear from the code when
considered in its entirety, unless there is an error such as a typographical
one.@); see
also In re Doe, 19 S.W.3d 346, 365 (Tex. 2000) (Gonzales, J.,
concurring)  (A[T]he
duty of a judge is to follow the law as written by the Legislature.@)
(emphasis added).








6.         Requiring the City to pay the fire
fighters is not unconstitutional.

Next, the
City contends that requiring it to pay the fire fighters for overtime in this
situation would violate provisions of the Texas Constitution.  The City contends that sections 44 and 53 of
article III of the Texas ConstitutionCwhich
prohibit additional compensation after services have been renderedCwould be
violated if the City had to pay the fire fighters overtime in this situation.[13]  The City also contends that requiring it to
pay overtime in this situation would violate section 51 of the same articleCwhich
prohibits the grant of public monies for an unauthorized purpose.  See id. ' 51.[14]   These contentions fail for the reasons that
follow.  








As
explained previously, the relevant statutory provisions require the City to pay
the fire fighters overtime because, when all hours spent working, on-call, or
on approved leave are counted, the fire fighters have been required to work
twenty-four hours of overtime during each 72-day work cycle.  Thus, the City is not giving the fire
fighters additional compensation, it is paying the fire fighters the
compensation that the City has always been required to pay by the Local
Government Code.  We conclude this does
not violate sections 44 and 53 of article III of the Texas Constitution.  See City of Orange v. Chance, 325
S.W.2d 838, 840 Tex. Civ. App.CBeaumont
1959, no writ) ( A[T]he
prohibition [of section 53] does not apply to payment of any fund or sum based
upon the contract of employment nor does it apply to the method or time of
payment.@); City
of Wichita Falls v. Cox, 300 S.W.2d 317, 321  (Tex. Civ. App.CFort
Worth 1957, writ ref=d n.r.e.)
(AThe
Constitution of Texas, Art. 3, sec. 53, . . . does not inhibit the award to appellees
of the >back pay= to which
they were entitled but not paid . . ., since appellees were entitled to be paid
the >back pay= at the
time they performed services for which it was payable.@).

Finally,
paying the fire fighters for the services they have rendered to the public does
not implicate the evilCgratuitous
grants from public fundsCthat
section 51 seeks to prevent.  See
Edgewood Indep. Sch. Dist. v. Meno, 917 S.W.2d 717, 740 (Tex. 1995) (AA
transfer of funds for a public purpose, with a clear public
benefit received in return, does not amount to a lending of credit or grant of public funds in violation of
article III, sections 51 and 52.@); Bailey
v. State, 15 S.W.3d 622, 626 (Tex. App.CDallas
2000, no pet.) (same); State v. City of Austin, 160 Tex. 348, 331 S.W.2d
737, 742 (1960) (AThe
purpose of [section 51] is to prevent the application of public funds for
private purposes; in other words, to prevent the gratuitous grant of such funds
to any individual or corporation whatsoever.@); see
also Tex. Mun. League Intergovernmental Risk Pool v. Tex. Workers= Comp.
Comm=n, 74
S.W.3d 377, 392 (Tex. 2002) (J., Owen, dissenting) (A[A]
political subdivision may make expenditures for goods or services . . . as long
as those expenditures serve a legitimate public purpose.@).  

We
conclude that requiring the City to pay the fire fighters
statutorily-authorized compensation that they have earned for services rendered
for the public good does not violate the Texas Constitution.  








7.         The fire fighters have a right to enforce payment in
accordance with the Texas Local Government Code.

In their
final contention with respect to the fire fighters= Debit
Dock claim, the City states that it has the discretion to set its fire fighters= work
schedules and determine their wages. 
According to the City, the fire fighters cannot obtain relief because
the Texas Supreme Court has held that their positions and corresponding wages
are not property rights protected by due process or otherwise.  See City of Amarillo v. Hancock, 150
Tex. 231, 239 S.W.2d 788 (1951).  We
disagree with the City=s
interpretation of the holding in Hancock.  In that case, the Texas Supreme Court found
that a fire fighter did not have an inherent right to appeal when the statute
was silent regarding a right to appeal, and no vested property right was at
stake.  See id., 239 S.W.2d at 791B92.  The Court held that the fire fighter did not
have a vested property right to be assigned to a particular position, and
concomitantly to that position=s
assigned wages, under the Due Process Clause of the Constitution.  See id. at 791.  The Court was not addressing the situation we
have in this case: a claim for wages earned and authorized under the Texas
Local Government Code.  See id. at
791B92.  The City has not cited, and we have not
located, any authority to the effect that the fire fighters do not have a right
to be paid by the City for the beneficial services they have rendered.

In sum,
we find the City=s
arguments unpersuasive.  The trial court
did not err in granting partial judgment in the fire fighters= favor on
the Debit Dock claim.  We overrule the
City=s third
issue.

V.        Termination Pay Claim

In its
final issue, the City contends that the trial court erred in granting partial
summary judgment in the fire fighters= favor on
their Termination Pay claim.  The City
asserts that its own ordinances and the Local Government Code permit it to
calculate the amount it owes to fire fighters for unused vacation and sick
leave based only upon their regular pay (base pay plus longevity pay).  The fire fighters, on the other hand, argue
that the City must also include premium pay, such as assignment pay and
educational incentive pay, in the calculation.








A.        The City=s
Ordinance

The City
initially points out that the Local Government Code allows it to set the amount
of assignment pay, and the conditions under which it is payable, by
ordinance.  See Tex. Local Gov=t Code '
143.114(c).  The City then contends that
its ordinanceCwhich states that a fire fighter=s salary
for accrued leave time includes only base pay plus longevity pay, as
termination payout, and not any form of premium payCallows
the City to pay the fire fighters as it did. 
See City of Houston Code
of Ordinances No. 34-63.  

We find
the City=s
argument unavailing.  Although the Local
Government Code allows the City to set the amount of assignment pay and the
conditions under which it is payable by ordinance, the City=s
ordinances cannot override the statutory scheme established by the
Legislature.  See Tex. Const., Art. XI, ' 5 (cities
with more than five thousand inhabitants may adopt and amend their own
charters, but Ano charter or any ordinance passed
under said charter shall contain any provision inconsistent with the
Constitution of the State, or of the general laws enacted by the Legislature of
this State@); City of Santa Fe v. Young,
949 S.W.2d 559, 560 (Tex. App.CHouston
[14th Dist.] 1997, no writ) (A[A]n
ordinance of a home-rule city that conflicts with a state statute is
unenforceable to the extent of such conflict.@) (citing
Dallas Merch.=s and
Concessionaire=s Ass=n v. City
of Dallas, 852 S.W.2d 489, 491 (Tex. 1993); City of Richardson v. Responsible
Dog Owners of Tex., 794 S.W.2d 17, 19 (Tex. 1990)); Gordon v. State,
757 S.W.2d 496, 502 (Tex. App.CHouston
[1st Dist.] 1988, pet. ref=d) (AAn
ordinance that is inconsistent with state legislation is impermissible.@) (citing
City of Brookside Vill. v. Comeau, 633 S.W.2d 790, 796 (Tex. 1982)). 








Section
143.115 of the Local Government Code specifically addresses payment for
accumulated vacation leave.  Tex. Local Gov=t Code  ' 143.115
(APayment
of Accumulated Vacation Leave in Populous Municipality@).  This section states that a fire fighter Awho
leaves the classified service for any reason is entitled to receive in a
lump-sum payment the full amount of the person=s salary for the
period of the person=s
accumulated vacation leave.@  Id. (emphasis added).  Section 143.116 addresses payment for
accumulated sick leave.  Id. at
143.116 (APayment of Sick Leave on
Termination of Service@).  It provides that a fire fighter is entitled Ato
receive in a lump-sum payment the full amount of the . . . accumulated
sick leave.@ 
Id. '
143.116(a) (emphasis added).  Sick leave
accumulated before September 1, 1985 is valued at the fire fighter=s salary
on August 31, 1985.  Id. '
143.116(b). Sick leave accumulated after September 1, 1985 is valued at the
fire fighter=s average salary in the
fiscal year in which the sick leave was accumulated.  Id. Thus, the City must pay the fire
fighters based upon their salary, a word that is statutorily
defined.  

Section
143.110 of the Local Government Code, entitled ASalary,@ lists
the components of a fire fighter=s
salary.  Id. '
143.110.  This section states that, in
addition to base salary, a fire fighter is entitled to longevity pay, seniority
pay, educational incentive pay, assignment pay, and shift differential pay, if
applicable.[15]  Id. 
'
143.110(b). The City=s own
contrary ordinances do not prevail over the provisions of the Local Government
Code.  See Tex. Const., Art. XI, ' 5; Young,
949 S.W.2d at 560 (citing Dallas Merch.=s and
Concessionaire=s Ass=n, 852
S.W.2d at 491; Responsible Dog Owners of Tex., 794 S.W.2d at 19); Gordon,
757 S.W.2d at 502 (citing Comeau, 633 S.W.2d at 796). Thus, under the
plain language of this statute, we conclude that the City must pay a fire
fighter his full salary for unused vacation and sick leave, including
educational incentive pay and assignment pay.[16]








B.        Texas Local Government Code

Finally,
the City argues that, under the provisions of the Local Government Code and the
City=s
Ordinance No. 97-1575, the fire fighters cannot receive premium pay unless they
have actually performed the duties of that assignment.  At its heart, the City=s
argument is that the fire fighters can never receive assignment pay unless they
were actually at work performing the >specialized
functions= for which assignment pay is
authorized.[17]  We reject this contention for the reasons
that follow.  

First,
there is no statutory requirement that the fire fighter actually perform the
specialized function during any particular shift to qualify for assignment
pay.   Second, the statutory provisions
governing termination payouts for unused vacation and sick leave specify that a
fire fighter will be paid based upon the Afull
amount@ of his
or her salary.  And the word Asalary,@
statutorily defined to include the components of assignment pay and educational
incentive pay, is not limited to base pay and longevity pay.  Had the Legislature intended for the fire
fighters to be compensated only at the rate of their base pay and longevity
pay, the Legislature could easily have stated that the fire fighters were
entitled to only these certain types of pay. 
Because the Legislature did not, we conclude the City=s method
of calculating the fire fighters=
termination payouts is not authorized on this basis either.  








We
conclude the trial court did not err in granting partial judgment in the fire
fighters= favor on
their Termination Pay claim, and we overrule the City=s fourth
issue.

VI.       Conclusion

Having overruled each of
the City=s issues on appeal, we
affirm the trial court=s partial summary
judgment.  

 

 

/s/        Adele Hedges

Chief Justice

 

Judgment rendered and
Opinion filed August 23, 2005.

 

Panel consists of Chief
Justice Hedges and Justice Frost and Senior Chief Justice Murphy.[18]

 

 

 








EXHIBIT A

 

LIST OF APPELLEES

 

Steve Williams                                  Leonard
L. Cherry                 Frank Guthrie

Thomas G. Arfele                              Clifford
D. Chevalier            Newel K. Hamilton

Lloyd A. Irvin                         Samuel
R. Chumley               Everett H.
Harkless

Richard C. Mumey                            Donald
R. Clark                     David L.
Harper

Joseph M. Tortorice                         John
A. Clemens                   Leon J. Hauck

Leo Adams                                         Howard
N. Coates                 Charles E.
Hawthorne

Travis E. Adams                                 Robert
L. Cobb                      Donald W.
Helm

Leslie C. Adkins                                James
C. Collins                   James E.
Hilsher

George P. Alexander             Travis
A. Combs                    James H. Hobbs

Kevin J. Alexander                            Richard
C. Cook                    James W. Holden

Jerry W. Anderson                            Daniel
Cordaway                   John M.
Holleman Jr.

Leslie F. Anderson                            Robert
A. Cortez                   Lindsey G.
Holt

Lanny W. Armstrong             Willie
E. Cotten                    Richard A.
Horowitz

James T. Atkinson                             Dennis
Cox                            Robert
J. Huizar

Myron E. Atkinson                            James
R. Crowder                 Casey R. Jacoby

Charles D. Barr                                  Stanley
G. Curtis                   William P.
Jansa

Johnny E. Belin                                 William
B. Dalzell                Oscar S. Jenkins

Hillary Bell                                        Larry
C. Danna                       James B.
Jernigan

Thomas E. Belyeu                             Ronnie
H. Dees                     Billy W.
Johnson

Robert L. Bennett                              Sam
L. DeForke Jr.               Franklin E.
Kelner

Paul N. Bernard                                 Charles
F. Demoss                Joseph Kirvin

Craig E. Boegler                                Ronald
E. Dornak                  James P. Kivel

Ronnie L. Boegler                             Norman
E. Driskell               Louis E. Klare

Joseph T. Bond                                  Ernest
Duran                          Alton D.
Lee

Raymond Borden                               Ronald
Earnest                      Calvin L. Lee

Gary L. Bourgeois                             David
A. Easley                     Ralph J.
Lemon

Gary L. Brown                                   Billy
W. Emmons                  William M.
Lindsey

Sidney R. Bruce                                 Bobby
C. Englishbee Marvin Litzler

Ray Burt                                             Daniel
E. Estes                      William
Lobins

Arthur Butler                                     Allen L. Farris                       Richard Locke

John G. Butler                                   John
L. Filar                           Phillip
A. Long

Dennis C. Byrd                                  Jarvis
D. Fisher                      Francis X.
Maher

Manuel G. Caballero             Lynn
E. Fortune                     Lawrence M.
Malck

Lonny R. Cameron                            Michael
R. Gann                    John J.
Maniscalco

John Cannon                                      Ralph
M. Garza                      George A.
Manos

Chester A. Cary                                 Richard
L. Garza                    Richard Massey

Daniel W. Casanover                        Brad
T. Gibson                       Stanley
McCoy

Charles B. Cason                               Willie
E. Glass Jr.                 Jackie R.
McDonald Jr.

Ezdore P. Cegielski                          Johnny
D. Glover                  Richard A.
McTague

Dennis Celsor                                    Frank
E. Gore                        Gary W.
Miller








Billy S. Chaffin                                  Zenus
A. Graham                   Jesus L.
Minjares

Frederick V. Moore                          John
S. Taylor                        William
N. Brown

Tranquilino C. Munoz                       James
L. Tharp                       William R.
Campbell

Sammy J. Musachia                           Amar
P. Thibodeaux  John L. Carter

Gary W. Nelius                                  Billy
W. Thompson               John M.
Christopher 

Terry Oberpriller                               Duron
J. Thorne                     Gary T. Dean

Donald C. Paradowski                       Ronnie
L. Tidwell                  Jimmie Dearing

James L. Pavlock                               David
A. Tilbury                    Gus Leon
Fress

Marcos O. Perez                               James
H. Tucker                    Thomas
Gainous

Charles Phlegm                                 Lester
W. Tyra                       David N.
Gilchrist

Eugene W. Pilkington                       Willie
G. Vick                       Donna Golden

Johnnie S. Posuk                               Gilbert
Villareal                    Gordon L.
Griffin

Christopher Potier                            Jerry
D. Wakefield                Victor
Gustafson

Jerry W. Powers                                Oscar
F. Wallace Jr.              Samuel Hamilton

Harold J. Prevost                               Michael
F. Wead                   Paul D. Hayes,
Deceased

Harry C. Pruitt                                   Marion
Weaver                      Michael J.
Herman

Robert E. Putnam                              Jack
E. Wedgeworth             Manuel M. Herrera

Rocco R. Rao                                    Larry
A. Wesley                    Aubrey
Houston

Edmond B. Reeves                            Charles
V. Wheeler               Larry Hunter

David Reyes                                       Charles
J. Whitcher              Charles A. Ingram

Jose L. Reyes                                                Daniel Whiting Jr.                 Mearl L. Jones

James B. Riggs Jr.                             James
M. Williams               John Kling

George A. Ross                                 Charlie
S. Wilson Jr. Jerry D. Lee

Anthony Russo                                  John
P. Wood                        Travis D.
Lee

Daniel Salazar                                    Robert
Wroblewski               Darrell Mahalec

William E. Sammons                        Antoine
E. Yazbeck               Daniel E. Malek

Leon Sandles                                     Carl B. Young                        Raul Martinez

Travis J. Sattiewhite                          Jimmy Bundrick                    Michael C. McFarland

William L. Scates                              Daniel
J. Dillard Sr.              Royce Melton

Sammy L. Schillaci, Deceased         Wayne C. Grissom                James
G. Miller

Phillip S. Schultz                               Gene
Guentert                       Romeo
Montalvo

Anthony G. Schulze                           Wendell Keilers                    Louis S. Moore

George C. Seaback                            William
Henry King             Roy E. Moore

Terry Shaffer                                     Jerry McDaniel                     Wayne Murphy

Robert C. Sherrard                            Jerry
D. Smith                       Carl N.
Newman

Billy H. Sheffield                              Paul
Albarado                        David L.
Norris

Roy L. Simmons                                Benny
H. Albers                    Gary Pick

Allen D. Stagner                                Alex
J. Arizpe                        Robert W.
Prescott

Herbert W. Stein                               Ulysess
Armstrong               Larry Prevatte

Leonard Stephens                              Chapman
E. Baber                 Eddy Proske

Robert W. Steward                            Ronnie
Bates                         Walter B. Kirk

Wilbert P. Steward                            Royce
G. Beck                      Leon D.
Lehmann

David Stewart                         Phillip
Bernard                      Eddie Lowery

Lloyd W. Stone                                 David
Bonds                           








Bruce Talbot                                      Kenneth
A. Broeder              

Reginald Tarver                                 Billy
Bromonsky                               

Darrell R. Shely                                 Williams
H. Skinner

William L. Sivley                              William
D. Smelley

Dannie C. Smith                                Thomas
Spencer                    

Lance Stahl                                        Bob
C. Strahan

Jerry Stansel                                      Richard
F. Thomas

Melvin L. Starling                             Jerry
W. Thompson

William R. Stone                               Terry
G. Thompson

Anthony J. Tamborello                     John
M. Tumis

Rex A. Ticknor                                  Larry
W. Wade

Edward K. Ward                                Wesley
Waldrum

Douglas R. Weidemann                    Jerry
E. Walker

Frederick J. Wessman                      Roger
W. Walker 

William Kirk Williams                     Dale
G. Watson

James A. Wright                                Bobby
J. Weatherly

Zeke Zimmerman                              James
E. Wilkerson

James Allen                                       Michael
Craig Williams

Norman E. Allen                                Richard
Williams

Curtis H. Barker                                Aurora
Carrasco-Ybarra

Gary P. Bennett                                 Oscar
E. Sacher

Raymond R. Bennett             Harvard
E. Schroeder

Terry L. Bolton                                  Earl
D. Manning

Ben H. Brymer                                  Kenneth
R. Martin

Bobby D. Carraway                           Christopher
E. Mellen

Joseph A. Clark                                 Calvin
Mendel

John T. Crocker                                 Steven
L. Merrel

Gary L. Davison                                 David
Mills

Norman Donalson                             Donald
R. Myers

Ralph E. Frazier                                 Larry
L. Rooney

Gregory A. Galan                              Jerry
L. Sanders 

James E. Goetzman                           Anthony
S. Reynolds

Gary Grimes                                      Carlos
E. Robledo

Loyd R. Hunter                                  Billy
G. Royal

Rodney D. Johnson                           Louis
L. Rumfolo











[1]  Williams, who
originally brought suit to overturn a temporary suspension he received, appears
to be the only non-retiree plaintiff. 
Later, the other fire fighters, all retired, joined in this suit.  For simplicity, we refer to all appellees as Athe fire fighters.@  A complete list of their names appears in
Exhibit A.





[2]  The term
sovereign immunity refers to the State=s
immunity, while governmental immunity protects subdivisions of the State, such
as the City.  See Wichita Falls State
Hosp. v. Taylor, 106 S.W.3d 692, 694 n.3 (Tex. 2003).  The case law sometimes uses the terms Asovereign immunity@ and Agovernmental immunity@
interchangeably.





[3]  The City
argues that the fire fighters could have filed a grievance when they were
informed of the amounts of their lump-sum payments.  But this contention ignores the statutory
language, which provides an administrative remedy only after the City
takes some sort of action.  See Tex. Local Gov=t Code ' 
143.127(d).  This conclusion is
reinforced by the fact that, with respect to one fire fighter who completed all
four steps of the grievance process, the Civil Service Commission ultimately
found that it Alacked jurisdiction@ because
his claim was Anot ripe.@





[4]  The City
agreed to the following stipulations: AAt the
time each Plaintiff received their termination pay check, which included the
dock of previously paid overtime, they were no longer employees of the City of
Houston,@ and AAt the time each Plaintiff received their termination
pay check, Plaintiffs were no longer subject to the jurisdiction of the Civil
Service Commission of the City of Houston, Texas or the grievance procedure in
Texas Local Government Code, Chapter 143.@





[5]  According to
the City=s counsel at oral argument, the City no longer uses
the revised work schedule that gave rise to this litigation.  The revised work schedule was in effect for
about two years.





[6]  The Texas
Local Government Code and the City=s Code
of Ordinances prescribe the methods used to calculate a fire fighter=s pay.  Because
we analyze the statutes in greater detail later, we describe their requirements
only generally here.





[7]  The remaining
cause of action, to overturn Steve Williams=s
temporary suspension, remained under the original cause number, 2002-22690,
while the causes of action involved in this appeal received the cause number
2002-22690-A.





[8]  In its
briefing to this court, the City asserts that permanent injunctive relief is
inappropriate because an adequate remedy at law exists, namely, money
damages.  However, because the trial
court=s judgment expressly reserves any determination of
injunctive relief for a later date, we do not reach this issue.





[9]  See Tex. Civ. Prac. & Rem. Code ' 51.014(d) (district court may issue a written order
for interlocutory appeal in a civil action that would not otherwise be
appealable if: 1) the parties agree that the order involves a controlling
question of law as to which there is a substantial ground for difference of
opinion; 2) an immediate appeal may materially advance the litigation=s ultimate termination; and 3) the parties agree to
the order).





[10]  This
interpretation also avoids an absurd result; the City=s interpretation would include only these hours if a
fire fighter remained on-call while he or she was sick, or even away on
vacation. See Tex. Gov=t Code ' 311.023 (court may consider consequences of a
particular construction); City of Houston v. Jackson, 42 S.W.3d 316, 322
(Tex. App.CHouston [14th Dist.] 2001, pet. dism=d w.o.j.) (rejecting constructions that would
frustrate legislative intent and impose a patently absurd result) (citing Sharp
v. House of Lloyd, Inc., 815 S.W.2d 245, 249 (Tex. 1991)).





[11]  The fire
fighters point out the absence of any cited statutory authority for the City to
designate three eight-hour shifts as the only 24 hours during the work cycle
that are eligible for overtime compensation. 





[12]  The City
contends that a debit day consists of only 16 working hours.  Thus, according to the City, the fire
fighters were off-duty for the remaining eight hours of the 24-hour day.





[13]  Section 44
provides:

The
Legislature shall provide by law for the compensation of all officers,
servants, agents and public contractors, not provided for in this Constitution,
but shall not grant extra compensation to any officer, agent, servant, or
public contractors, after such public service shall have been performed or
contract entered into, for the performance of the same; nor grant, by
appropriation or otherwise, any amount of money out of the Treasury of the
State, to any individual, on a claim, real or pretended, when the same shall
not have been provided for by pre-existing law; nor employ any one in the name
of the State, unless authorized by pre-existing law.

Tex. Const. art. III, ' 44.

            Section
53 provides:

The
Legislature shall have no power to grant, or to authorize any county or
municipal authority to grant, any extra compensation, fee or allowance to a
public officer, agent, servant or contractor, after service has been rendered,
or a contract has been entered into, and performed in whole or in part; nor
pay, nor authorize the payment of, any claim created against any county or
municipality of the State, under any agreement or contract, made without
authority of law.

Id. ' 53.





[14]  Section 51
provides:

The
Legislature shall have no power to make any grant or authorize the making of
any grant of public moneys to any individual, association of individuals,
municipal or other corporations whatsoever;  
provided that the provisions of this Section shall not be construed so
as to prevent the grant of aid in cases of public calamity.

Tex. Const. art. III, ' 51.

 





[15]  The City
admitted, in response to the fire fighters= request
for admissions, that a fire fighter=s salary
includes base pay, and if applicable, longevity pay, assignment pay, and
educational incentive pay.  





[16]  This
conclusionCthat the City must pay fire fighters their full salary
for unused vacation or leave timeCis
consistent with the San Antonio Court of Appeals= and the
Attorney General=s interpretation of section 143.045 of the Local
Government Code.  See Comm=rs Court of Titus County v. Agan, 940 S.W.2d 
77, 82 (Tex. 1997) (opinions from the Attorney General are persuasive
but not binding authority). Both concluded that fire fighters were entitled to
be paid the same amount they would have been paid had they actually used the
vacation or sick leave time.  See Op.
Tex. Att=y Gen. No. LO-90-72 (1990) (termination lump‑sum
payment must be equivalent to the pay the individual would have received >if the person had taken the sick leave.=@); City of San Antonio v. Baer, 100 S.W.3d 249,
253 (Tex. App.CSan Antonio 2001, no pet.) (fire fighters were
entitled to the full amount of salary they would have received had they taken
the approved leave days).  The City does
not contest that the fire fighters would have received premium pay in addition
to their base and longevity pay if they had actually used the sick leave or
vacation time.  Section 143.045 differs
from the sections discussed above because of its broader application; the
sections discussed above, 143.115 and 143.116, pertain only to municipalities
with more than 1.5 million inhabitants, while section 143.045 is not limited in
that fashion.  This discrepancy is a
distinction without a difference.  The
statutory language in the sections is functionally identical.  See Tex.
Local Gov=t Code ' 143.045(c) (a fire fighter is entitled to receive a
lump-sum termination payment in Athe full
amount of the person=s salary@); ' 143.115 (a fire fighter is entitled to Athe full amount of the person=s salary@ for
accumulated vacation leave); ' 145.116 (a fire fighter is entitled to the Afull amount of the [fire fighter=s] accumulated sick leave@).





[17]  See Tex. Local Gov=t Code ' 143.113(b) (municipality may authorize assignment pay
for fire fighters who perform specialized functions); City of Houston Ordinance No. 97-1575, ' 5  (permitting assignment
pay for one who serves in a paramedic capacity); ' 6
(permitting emergency medical technician assignment pay for one who is assigned
to an emergency medical ambulance unit); ' 7
(permitting assignment pay for one who is assigned to the field training
program and is actually performing the duties and responsibilities of that
program); ' 8 (permitting assignment pay to one who is assigned
to, and actually does, perform the duties of a District Training Officer); ' 9 (permitting Paramedic Preceptor assignment pay only
while the person is designated by the Fire Chief and while an intern is
assigned); ' 10 (permitting assignment pay for one who is assigned
to the Hazardous Duty Response Team or who participates in the stabilization of
hazardous materials in an emergency).





[18]  Senior Chief
Justice Paul C. Murphy sitting by assignment pursuant to Tex. Gov=t Code ' 74.003(h).